IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIE HOLAK,<br>an individual<br>                Plaintiff,<br>  v.<br>KMART CORPORATION, a Michigan corporation; SEARS HOLDINGS MANAGEMENT, a Delaware corporation; ADIN VELASQUEZ; and DOES 1 through 10, inclusive,<br>                Defendants. | 1:12-CV-00304 AWI MJS<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE<br><br>(Doc. No. 8, 10) |

## BACKGROUND

In this proposed class action Plaintiff Amie Holak ("Plaintiff") asserts various wage and hour allegations against Defendants Kmart Corporation ("Kmart") and Sears Holdings Management Corporation.[1]  On January 3, 2012, Plaintiff brought the action in Fresno County Superior Court on behalf of "[a]ll non-exempt or hourly paid employees who worked for Defendants in a California K Mart store within four years prior to the filing of this complaint until the date of certification." *Id.* at ¶ 18.  The complaint seeks recovery of monetary damages and other relief against Defendants for alleged violations of (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 1194, 1197, and 1197.1

---

[1] On July 12, 2012, the Court dismissed individual Defendant Adin Velasquez, pursuant to the parties' stipulation.  *See* Court's Docket, Doc. No. 31.  Therefore, the Court need not address the portions of Defendants' motion directed at the dismissal of Defendant Velasquez.

(unpaid minimum wages); (3) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (4) California Labor Code section 226(a) (non-compliant wage statements); (5) California Labor Code section 221 (unlawful wage deductions); (6) California Labor Code section 212 (unlawful discount of wages); (7) California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(14) (failure to provide seating); (8) California Labor Code sections 2698, *et seq.* (Private Attorneys General Act of 2004 ("PAGA")); and (9) California Business & Professions Code sections 17200, *et seq*. *See* Compl. ¶¶ 47-105. On February 29, 2012, Defendants removed the action to this court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453. *See* Court's Docket, Doc. No. 1.[2]  On May 4, 2012, the Court denied Plaintiff's motion to remand. *Id.* at Doc. No. 20.

Defendants now move to dismiss Sears as an improper defendant, and Plaintiff's fifth and sixth claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Court's Docket, Doc. No. 8. Defendants also move to strike Plaintiff's class allegations and requests for injunctive relief. *See* Court's Docket, Doc. No. 10. For the reasons stated herein, the motions will be granted in part and denied in part.

**FACTS**

From July 2008 to February 2010 and again from December 2010 to September 2011, Plaintiff was employed as a non-exempt, hourly paid "Team Lead" at a Kmart store located in Coalinga, California. Compl. ¶ 26. In 2009, Plaintiff alleges Defendants stopped issuing paper paychecks to employees and instead offered the option of enrolling in direct deposit or accepting

---

[2] On June 29, 2012, Defendant filed a notice of related case regarding a putative class action involving similar subject matter pending in the United States District Court for the Northern District of California, *Garvey v. Kmart Corp.*, No. C 11-02575 WHA. *See* Court's Docket, Doc. No. 29. It appears that the Northern District has certified the following class under Rule 23(b)(3) to pursue a claim against Kmart for failure to provide seating to cashiers in violation of California Wage Order 7-2001(14): "All persons who, during the applicable statute of limitations, were employed as Cashier for defendant at its Tulare Kmart store and were not provided with a seat while working the front-end cash registers." *Garvey v. Kmart Corp.*, 2012 WL 2945473, at * 7. Based on the allegations in the Complaint, Plaintiff does not appear to be a member of this class.

2

payroll debit cards. *Id.* Plaintiff alleges she "did not learn of fees and charges associated with her use of the payroll debit card until after she elected to receive a payroll debit card." *Id.* Once she chose to receive the payroll debit card, she received the "Schedule of Fees" from the payroll debit card issuer. *Id.* Plaintiff claims she was "unable to make at least one withdraw of her entire wages without incurring a fee" after she began using the payroll debit card to receive her wages. *Id.* ¶ 27.

Plaintiff further alleges that Defendants have maintained a corporate policy of charging Plaintiff and putative class members fees for obtaining their wages through the payroll debit card program, said fees were deducted from their wages, and Plaintiff and putative class members did not authorize these fees to be deducted by Defendants. *Id.* ¶¶ 76-80. Plaintiff alleges Defendants required her and putative class members to be paid by payroll debit card if they did not enroll in direct deposit, and that she and putative class members had to go inside a bank or use an ATM machine to withdraw cash from said cards. *Id.* ¶ 83. Plaintiff also alleges she and putative class members could not withdraw wages without incurring a withdrawal fee for the transaction, whether it be from a bank or an ATM. *Id.* ¶¶ 81-85. Finally, Plaintiff alleges that, when using an ATM to withdraw wages, because an ATM only dispenses cash in increments of $20, Plaintiff and putative class members could not access their entire wages in a single withdrawal and incurred transaction fees with every ATM withdrawal after the first in a given pay period. *Id.*

## LEGAL STANDARD

### A.     Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels–Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

      B.      **Motion to Strike**

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial.  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994).  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.* 984 F.2d at 1527.  "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the

4

parties." *Lindblom v. Secretary of Army*, No. 2:06-cv-2280-GEB-GGH, 2007 WL 1378019, *1 (E.D.Cal. May 10, 2007) (quoting *Campbell v. PricewaterhouseCoopers, LLP,* No. CIV. S-06-2376 LKK/GGH, 2007 WL 841694, *2 (E.D.Cal. Mar. 20, 2007)).

## DISCUSSION

**A.     Motion to Dismiss**

*1.     Leave to Amend to Add the Proper Sears Defendant*

Defendants first contend that Sears Holdings Management Corporation must be dismissed as a defendant because Plaintiff has not alleged that she was employed by Sears Holdings Management Corporation, and the Complaint is predicated on Plaintiff's employment at a Kmart store.  Defendants note that Sears Holdings Management Corporation is a subsidiary of Kmart Corporation.  Plaintiff contends she believed Kmart Corporation was a wholly owned subsidiary under the control of Sears Holdings Management Corporation.  However, she concedes that upon further investigation, she realized the appropriate defendant may be Sears Holdings Corporation, rather than Sears Holdings Management Corporation.  Plaintiff therefore seeks leave to amend her complaint to name the proper Sears defendant.  Accordingly, the Court will dismiss Sears Holdings Management Corporation as a defendant.

Defendants oppose Plaintiff's request to amend her complaint and deny that Sears Holdings Corporation is a proper defendant.  According to Kmart's Corporate Disclosure Statement, filed on February 29, 2012, Kmart Corporation is wholly owned by Kmart Holding Corporation, which, in turn, is wholly owned by Sears Holdings Corporation.  *See* Court's Docket, Doc. No. 1-7.  Defendants further point out that Plaintiff had time to amend her complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). Defendants now urge the Court to deny leave to amend under Rule 15(a)(2) to prevent Plaintiff from "cherry-picking" defendants to add to this litigation.  As Defendants note, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent

5

corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61, 118 S.Ct. 1876, 1884 (1998) (quoting Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). However, California courts may pierce the corporate veil and impose alter ego liability based on a parent-subsidiary relationship under certain circumstances:

> There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are, nevertheless, two general requirements: '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' (*Automotriz etc. de California v. Resnick*, 47 Cal.2d 792, 796, 306 P.2d 1 (Cal. 1957)). And 'only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual.' (*McLoughlin v. L. Bloom Sons Co., Inc.*, 206 Cal.App.2d 848, 851, 24 Cal.Rptr. 311 (Cal. 1962)).

*Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300, 702 P.2d 601, 606, 216 Cal.Rptr. 443, 448 (Cal. 1985). The Court will grant Plaintiff leave to amend to name an additional corporate defendant to the extent she can allege sufficient facts to give rise to a plausible basis for piercing the corporate veil.

### 2.   *Plaintiff's Claims for Unlawful Wage Deductions and Unlawful Discount of Wages*

Defendants have moved to dismiss Plaintiff's fifth and sixth causes of action for failure to state a claim. These causes of action are based on Plaintiff's allegation that Kmart violated California Labor Code sections 212 and 221 by charging fees for obtaining wages through the payroll debit card program. Labor Code section 221 makes it "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Labor Code § 221. Labor Code section 212(a)(1) prohibits the payment of wages by:

> Any order, check, draft, note, memorandum, or other acknowledgment of indebtedness, unless it is negotiable and payable in cash, on demand, without discount, at some established place of business in the state, the name and address of which must appear on the instrument, and at the time of its issuance and for a reasonable time thereafter, which must be at least 30

6

days, the maker or drawer has sufficient funds in, or credit, arrangement, or understanding with the drawee for its payment.

Cal. Labor Code § 212(a)(1). California Labor Code section 225.5 provides a penalty for violations of section 212. "The mandatory penalties of section 225.5 are limited to violations of section 212 that involve the withholding of wages. If an employee cashed her check on demand and without fee there was no withholding of wages," and therefore no penalty arises. *Solis v. Regis Corp.*, 612 F.Supp.2d 1085, 1088 (N.D.Cal. 2007).

Defendants argue that Plaintiff cannot allege that the payroll debit card program was unlawful. In support of their position, Defendants submit the written terms of the payroll debit card and the schedule of fees they claim were mailed to Plaintiff, as well as the terms of the payroll debit card available on the company website. *See* Court's Docket, Doc. No. 8, Exs. 1, 2. Plaintiff objects to Defendants' use of these documents. Plaintiff contends the documents violate Federal Rules of Evidence 401, 402, 403, 801, 802, 901, 1002, and 1003. *See* Court's Docket, Doc. Nos. 14 at 15-15; 14-1. Specifically, Plaintiff argues the documents are unauthenticated hearsay because they were attached to Defendants' motion without a supporting declaration to demonstrate the authenticity of the documents.

Plaintiff's evidentiary objections are overruled. Without converting the motion into one for summary judgment, a court may consider external documents in deciding a motion to dismiss if the documents are "incorporated by reference" in the complaint. *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005). When a plaintiff's claim relies on the contents of a document, the incorporation by reference doctrine permits a defendant to attach the document to its motion to dismiss, so long as the parties do not dispute the authenticity of the document. *Id.* Plaintiff's complaint alleges the payroll debit card program charged Plaintiff and putative class members illegal fees to use their payroll debit cards. The complaint alleges Plaintiff received the terms and conditions and schedule of fees from the payroll debit card issuer, and "although the terms of the payroll debit card indicate Plaintiff is permitted one 'free' withdrawal per pay period,

7

Plaintiff does not have the ability to withdraw her entire wages in a pay period without incurring a transaction fee." Compl. ¶ 27. Plaintiff's complaint therefore relies on the contents of the terms and conditions and schedule of fees for the payroll debit card program.

Page 14 of Exhibit 1 appears to be a letter from Sears and Kmart addressed to Amie Holak introducing the Payroll Choices™ Program, provided by Citi® Prepaid Services. *See* Court's Docket, Doc. No. 8, Ex. 1. Page 15 of Exhibit 1 purports to be a mailer from Citi addressed to "ficticious name and data," setting forth instructions for using the payroll card, important card tips, a schedule of supplemental terms, and a schedule of fees. *Id.* Plaintiff argues that these documents provide no indication that they were ever sent to or received by her, that they pertain to her, or that she gave her express consent to make such wage deductions. Plaintiff does not, however, contend that she never received these documents, nor has she submitted the terms and conditions or schedule of fees referenced in the complaint. Further, the Court notes that the complaint's allegations regarding the terms and conditions and schedule of fees she received are not inconsistent with the documents submitted by Defendants. Finally, Defendants have offered to provide a declaration authenticating the exhibits to their motion.

An exception to the authentication requirement is warranted "where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural grounds." *Burch v. Regents of Univ. of Calif.*, 433 F. Supp. 2d 1110, 1120-21 (E.D. Cal. 2006) (quoting *Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003)). Here, Plaintiff's objection to Exhibit 1 is based solely on Defendants' procedural failure to provide a declaration authenticating the documents. The Court finds that Plaintiff has not presented any evidence to dispute in good faith the authenticity of the documents attached as Exhibit 1 to Defendants' memorandum in support of their motion. Thus, consideration of Exhibit 1 is appropriate at the motion to dismiss stage pursuant to the incorporation by reference doctrine. However, the complaint does not allege that Plaintiff reviewed or accessed the terms of the payroll debit card on Kmart's website, attached as Exhibit 2 to Defendants' motion to

dismiss. The Court therefore will not rely on Exhibit 2 in deciding the motion to dismiss.

The terms and schedule of fees submitted by Defendants suggest that Kmart's payroll card program provided at least two ways for Plaintiff to withdraw her entire paycheck on demand without incurring any fees, including by going to a MasterCard-affiliated bank and withdrawing the funds from a teller, or by using a free "pre-check" to write herself a check and cash it at a Citibank branch or Citibank-affiliated check cashing location. *See* Court's Docket, Doc. No. 8, Ex. 1 at 14-17. Plaintiff does not allege that she attempted to use either of these methods and incurred a fee. Rather, her claims are confined to the assertions that "[u]pon information and belief, Plaintiff and Payroll Card Subclass members could not withdraw their wages from a bank without incurring a withdrawal fee for the transaction," and they "were unable to access their entire wages from an ATM machine because the ATM machine could only disperse cash in increments of twenty ($20) dollars." Compl. ¶ 83. As discussed below, these allegations are insufficient to state a claim for violation of California Labor Code sections 212 and 221.

The California Division of Labor Standards Enforcement ("DLSE") has issued opinion letters regarding the compliance with the Labor Code of other payroll debit card programs, similar to the one at issue here.[3] *See* RJN, Exs. A, B. While DLSE opinion letters are not entitled to deference, district courts have looked to them as a source of persuasive authority. *See Cardenas v. McLane FoodServices, Inc.*, 796 F.Supp.2d 1246, 1251-52 (C.D.Cal. 2011). In the two letters submitted by Defendants, the DLSE opined that payroll debit card programs do not violate the Labor Code where the employees are fully informed of the service and it is represented as an alternative method for wage payment for which their participation is optional. *See* RJN, Ex. A at 12; Ex. B at 17-18. Here, the complaint specifically alleges that Defendants

---

[3] Defendants request judicial notice of the following documents: (1) DLSE Opinion 2008.07.07, dated July 7, 2008 (Exhibit A); and (2) DLSE Opinion 2008.07.07-2, dated July 7, 2008 (Exhibit B). Plaintiff does not object to Defendants' request. A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986)). The Court grants Defendants' request for judicial notice of these opinion letters.

9

offered employees the option of enrolling in direct deposit or accepting payroll debit cards in lieu of a paycheck, and that Plaintiff elected[3] to receive the payroll debit card. *See* Compl. ¶ 26. DLSE further observed that California courts have recognized the strong public policy favoring the prompt and full payment of wages. *See* RJN, Ex. A at 11 (citing *Kerr's Catering Service v. Dept. of Industrial Relations*, 57 Cal.2d 319, 326 (Cal. 1962)). However, DLSE also noted that this can be satisfied by "providing for at least *one transaction per pay period without fee.* By providing one free transaction, the payroll debit card programs effectively provide for immediate and free access to an employee's wages in full." *See* RJN, Ex. A at 11-12. "The fact that there are other options for employees to choose such as to withdraw a lesser amount does not render the use of a payroll card violative of the employee's right to full and prompt payment of wages." *See* RJN, Ex. A at 12.

Plaintiff alleges that "upon information and belief" she could not withdraw her wages from a bank or ATM without incurring a withdrawal fee. Compl. ¶ 26. However, this is contradicted both by her own allegation that "Plaintiff and Payroll Subclass members were charged a transaction fee for every ATM withdrawal *after the first withdrawal in a pay period*,"

---

[3] Citing Labor Code § 224, Plaintiff argues that an employer must be "expressly authorized in writing by the employee" to withhold or divert any portion of that employee's wages. *See* Court's Docket, Doc. No. 14 at 18. Reliance on § 224, however, is misplaced. That section provides, in relevant part:

> The provisions of Sections 221, 222 and 223 shall in no way make it unlawful for an employer to withhold or divert any portion of an employee's wages when the employer is required or empowered so to do by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute, or when a deduction to cover health and welfare or pension plan contributions is expressly authorized by a collective bargaining or wage agreement.

Cal. Labor Code § 224 (emphasis added). Section 224 does not require that an employee's election to receive wages by payroll debit card be expressly authorized in writing.

10

as well as the terms and conditions and schedule of fees submitted by Defendants. *See* Compl. ¶¶ 27, 83; Court's Docket, Doc. No. 8, Ex. 1. While the Court must construe the complaint in the light most favorable to the plaintiff, this rule does not apply to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). Therefore, in light of the DLSE opinion letters analyzing similar payroll debit card programs, as well as the terms and conditions and schedule of fees for the program at issue, Plaintiff's allegation that she does not have the ability to withdraw her entire wages in a pay period without incurring a transaction fee fails to state a claim for violation of California Labor Code sections 212 and 221. Accordingly, the fifth and sixth causes of action shall be dismissed.[4]

**B.     Motion to Strike**

Defendants move to strike Plaintiff's class allegations based on her "off-the-clock" theory – including overtime, minimum wage and derivative claims such as claims for waiting time penalties, inaccurate wage statements, and violations of PAGA and the California Business and Professions Code – on the grounds that Plaintiff has failed to adequately define the class and subclasses. *See* Court's Docket, Doc. No. 10. Defendants contend the putative class definitions are overly broad and necessarily include members who have suffered no injury and do not have standing to sue. *Id.* Specifically, Defendants challenge Plaintiff's class definition with respect to her allegation that she and putative class members were "required to wait off-the-clock while their supervisors finished up his or her [sic] duties, including closing procedures, and physically let them out of the store." Compl. ¶ 59. Defendants argue the class definition reaches employees who do not work closing shifts or who work at 24-hour Kmart stores and therefore suffered no

---

[4] In an abundance of caution, the Court will grant Plaintiff leave to amend her complaint to the extent she can allege facts regarding the specific terms and conditions of the payroll debit card program she contends violate the California Labor Code, or that she incurred a fee when attempting to use one of the fee-free methods for obtaining her wages, as defined in the terms and conditions and schedule of fees for the payroll debit card program.

11

injury.[5]

Plaintiff responds that Defendants' challenge is premature and Defendants' arguments are more properly addressed at the class certification stage of the litigation. *See* Court's Docket, Doc. No. 15. Plaintiff further argues that it is very rare to grant motions to strike class claims before discovery is conducted. Finally, Plaintiff contends that even if the motion to strike is not premature, she has sufficiently pleaded a class and subclasses that are ascertainable through the pre-certification discovery process.

The Court agrees that Defendants' arguments are premature. While Defendants correctly assert that class allegations may be stricken at the pleading stage, *see General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975), motions to strike class allegations "are disfavored because a motion for class certification is a more appropriate vehicle" for arguments about class propriety. *Thorpe v. Abbott Labs., Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal. 2008). Such a motion should be filed "[a]t an early practicable time" after a person sues. *See* Fed. R. Civ. P. 23(c)(1).

Here, Defendants have not yet answered Plaintiff's complaint, discovery has not commenced, and no motion for class certification has been filed. Class determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," and discovery is therefore integral. *General Telephone*, 457 U.S. at 160; *see also In re Wal-Mart Stores, Inc.,* 505 F. Supp.2d 609, 615 (N.D. Cal. 2007). Accordingly, the Court finds that the motion to strike the class allegations is premature and is therefore denied. The Court reserves determination of these issues for the class certification stage.

Defendants also move to strike Plaintiff's requests for injunctive relief. Plaintiff's fourth

---

[5] Because Plaintiff's claims related to the payroll debit card system are dismissed, the Court does not address Defendants' arguments regarding the payroll card subclass.

cause of action requests injunctive relief to ensure compliance with California Labor Code section 226(a), which requires that every employer shall furnish each of his or her employees an accurate itemized wage statement. The ninth cause of action also seeks injunctive relief for a violation of California Business and Professions Code section 17200, *et seq*. Defendants contend that a former employee has no standing to seek injunctive relief against her former employer. *See* Court's Docket, Doc. No. 10.

Plaintiff concedes that she may not seek injunctive relief to require Defendants to comply with wage and hour laws in the future because, as a former employee, she would not be affected by such an injunction. *See* Court's Docket, Doc. No. 15. However, Plaintiff argues the injunctive relief sought here is proper because California Labor Code section 226 provides that former employees may make claims pursuant to section 226. Plaintiff further argues that her claim for injunctive relief under California Business and Professions Code section 17200 is proper because it is intended to effect proper restitution.

The United States Supreme Court recently held that "plaintiffs no longer employed by [defendant] lack standing to seek injunctive or declaratory relief against its employment practices." *Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S. Ct. 2541, 2559-60 (2011). With respect to Section 226, the language of the statute refers to former employees in subsections (c) and (f).[6] However, Plaintiff's complaint does not allege a violation of those sections. Rather, Plaintiff alleges Defendants failed to provide itemized wage statements to employees as required by Section 226(a). Section 226(h) provides that "an employee may bring an action for injunctive relief to ensure compliance with this section." An injunction "to ensure compliance" with

---

[6] Those sections provide that an employer who receives a written or oral request to inspect or copy employment records pertaining to a current or former employee "shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request," Cal. Lab. Code. § 226(c), and that the failure by an employer to permit a current or former employee to inspect or copy records within that time frame entitles the current or former employee, or the Labor Commissioner, to recover a $750 penalty from the employer. Cal. Lab. Code § 226(f).

Section 226(a) is a form of prospective relief that necessarily affects only current and future employees. Plaintiff therefore has no standing to seek injunctive relief for a violation of Section 226(a).

Similarly, Plaintiff argues her claim for injunctive relief in the ninth cause of action "is intended to effect proper restitution under Section 17200 (requiring Defendants to pay all outstanding wages due to Plaintiff and class members)." *See* Court's Docket, Doc. No. 15. While restitution is an equitable remedy, it is not a form of declaratory or injunctive relief. In its discussion of backpay claims brought by a proposed class under Federal Rule of Civil Procedure 23(b)(2), the Supreme Court observed, "[t]he Rule does not speak of 'equitable' remedies generally but of injunctions and declaratory relief. As Title VII itself makes pellucidly clear, backpay is neither." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2559-60. In this case, Plaintiff's prayer for "injunctive relief to ensure compliance, pursuant to Section 17200, *et seq*." is a prospective remedy for which Plaintiff, a former employee, has no need. If successful, Plaintiff's claim for restitution can be satisfied through a judgment alone, without requiring a separate injunction. Because Plaintiff lacks standing to seek injunctive relief, her requests cannot be saved by amendment. Accordingly, the Court will grant Defendants' motion to strike Plaintiff's requests for injunctive relief with prejudice. *See Eminence Capital, LLC,* 316 F.3d at 1052; *see also Zanze v. Snelling Servs., LLC*, 412 Fed. Appx. 994, 997 (9th Cir. 2011) (affirming dismissal of former employee's claims for injunctive relief with prejudice).

**CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED with leave to amend consistent with the terms of this Order;

2. Defendants' motion to strike is GRANTED IN PART and DENIED IN PART;

3. Plaintiff's requests for injunctive relief are stricken with prejudice;

3. Plaintiff shall file any First Amended Complaint within 20 days of service of this Order.

IT IS SO ORDERED.

Dated: December 11, 2012

UNITED STATES DISTRICT JUDGE

15