1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AMIE HOLAK,**<br><br>Plaintiff,<br><br>v.<br><br>**KMART CORPORATION, et al.,**<br><br>Defendants. | 1:12-cv-00304 AWI MJS<br><br>**FINDINGS AND RECOMMENDATION REGARDING MOTION FOR CLASS CERTIFICATION AND RELATED DISCOVERY AND EVIDENTIARY MOTIONS**<br><br>[Docs. 82, 95, 104, 113] |

On January 10, 2014, plaintiff Amie Holak ("Plaintiff") filed the instant motion seeking class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure against defendant Kmart Corporation ("Defendant"). (ECF No. 85.) Both parties have filed cross-motions to strike declarations provided in support and defense of the certification motion. (ECF Nos. 95, 104.) Additionally, on March 3, 2014, Plaintiff filed a motion to modify the scheduling order and reopen discovery to allow further briefing in support of the certification motion. (ECF Nos. 113.)

The matters have been fully briefed, and on March 17, 2014, the Court deemed the matters submitted on the pleadings. (ECF No. 124.)

I. <u>**PROCEDURAL HISTORY**</u>

Plaintiff filed the instant action on January 23, 2012 in Fresno County Superior Court alleging California wage and hour violations against Defendant. Plaintiff presents

1  these claims on behalf of herself and "[a]ll non-exempt or hourly paid employees who
2  worked for Defendants in a California Kmart store within four years prior to the filing of
3  this complaint until the date of certification." (2nd Am. Compl. ¶ 16.)

4      On February 29, 2012, Defendant removed the matter to federal court based on
5  the Class Action Fairness Act. Plaintiff sought remand for lack of subject matter
6  jurisdiction on March 30, 2012. (ECF No. 12.) The Court denied the remand motion on
7  May 4, 2012. (ECF No. 20.)

8      Defendant filed a motion to dismiss and a motion to strike on March 7, 2012.
9  (ECF Nos. 8, 10.) In the motion to dismiss, Defendant moved to dismiss claims alleged
10  against an employee of Defendant and a subsidiary company of Defendant. In the
11  motion to strike, Defendant moved to strike the class allegations as overbroad, by
12  including employees that were not subject to the alleged wage violations. Prior to
13  adjudication of the motions, Plaintiff dismissed the defendant employee from the matter.
14  (ECF No. 31.)

15      On December 12, 2012, the Court granted Defendant's motion to dismiss with
16  leave to amend, and granted in part and denied in part Defendant's motion to strike.
17  (ECF No. 41.) The Court granted the motion to dismiss regarding naming a subsidiary
18  company as a defendant without sufficient factual basis to support the contention, but
19  provided Plaintiff leave to amend. (Id. at 6.) The Court also dismissed, with leave to
20  amend, Plaintiff's fifth and sixth causes of action based on alleged violations and fees
21  required to withdraw wages when using Defendant's payroll debit card. (Id. at 11.)
22  Finally, the Court denied Defendant's motion to strike the class allegations as premature,
23  but granted the motion to strike with regard to Plaintiff's injunctive relief claims. (Id. at 12-
24  14.)

25      On January 22, 2013, Plaintiff filed a second amended complaint. (ECF No. 52.)
26  In the complaint, Plaintiff only named defendant Kmart Corporation, and did not include
27  wage claims regarding penalties arising from the use of the payroll debit card system.
28  (Id.) On February 19, 2013, Defendant filed an answer to the complaint. (ECF No. 61.)

1    With regard to discovery, while the motions to dismiss and strike were still

2    pending, the parties filed a joint scheduling report on July 26, 2012. (ECF No. 33.) The

3    parties also exchanged initial disclosures under Fed. R. Civ. P. 26(a)(1) on the same

4    date.

5    In the joint scheduling report, Plaintiff proposed the date of June 7, 2013 for the

6    deadline for filing a motion for class certification, whereas Defendant proposed a

7    deadline roughly six months earlier on January 21, 2013. In light of the pending motions,

8    the scheduling conference was continued several times, and ultimately held on March

9    28, 2013. (ECF No. 70.) In the parties' second joint scheduling report filed on March 27,

10   2013, Plaintiff proposed that the motion for class certification be filed in roughly nine

11   months, on January 10, 2014. (ECF No. 69.) Defendant again proposed a much shorter

12   period, and requested that the certification motion be ordered due in three months, on

13   June 26, 2013. (Id.)

14   On March 29, 2013, the Court issued its scheduling order, and adopted the later

15   dates proposed by Plaintiff. (ECF No. 70.) Accordingly, the class certification motion was

16   due on January 10, 2014. (Id.) However, the Court instituted a discovery deadline of

17   October 10, 2013. The Court ordered that "[a]bsent contrary agreement between the

18   parties or further order of this Court, information and documents discovered or produced

19   after that date shall not be included in or considered by the Court in ruling on the [class

20   certification motion]." (Id. at 2.) Based on the scheduling order, the parties had six

21   months to continue to pursue further discovery with regard to certification issues.

22   On July 15, 2013, the parties requested a telephonic discovery dispute

23   conference which was held before the Magistrate Judge on July 17, 2013. (ECF No. 76,

24   81.) The issues raised were not resolved during the telephonic conference. (ECF No.

25   77.) The parties disputed the scope of discovery – Defendant asserted that Plaintiff was

26   not entitled to class-wide discovery without making a prima facie showing that discovery

27   was likely to produce substantiation of the class allegations. (ECF No. 78.) Defendant

28   provided Plaintiff information regarding the employees that worked at Plaintiff's store, but

refused to provide further discovery of possible class members from other stores in California. (Id.)

In support of her showing of the need for discovery of all employees of Defendant in California, Plaintiff provided her deposition testimony and a store closing bulletin. (ECF No. 78, Exs. C-D.) During a second telephonic discovery dispute conference on July 30, 2013, the Magistrate Judge told the parties that based on the evidence presented by Plaintiff at that time, it was not appropriate to require Defendant to provide discovery regarding employees from other California stores. Plaintiff explained to the Court that she had further evidence in support of certification. In light of such representations, the Court instructed Plaintiff to provide the additional information to Defendant and for the parties to discuss and attempt to reach a resolution regarding the scope of discovery without Court intervention. However, if that was not possible, Plaintiff was authorized to file a motion to compel the discovery of the additional employee information. The Court issued a minute order summarizing the telephonic conference:

> The discovery dispute was not resolved. Court authorized Plaintiff to file a Motion to Compel Discovery [regarding] Identification of Potential Class Members. Before filing a Motion to Compel, Plaintiff is to share her supporting evidence with Defendants, and parties are to meet and confer further to see if that evidence obviates the need for the Motion. Parties are here advised that the Court's preliminary review of the Points and Authorities and evidence contained in the Telephonic Discovery Dispute Conference briefs, does not identify criteria which would justify such discovery.

(ECF No. 81.) Plaintiff did not thereafter file a motion to compel or seek further Court intervention before the end of the period for certification discovery. Accordingly, the discovery period ended as scheduled on October 10, 2013. Three months later, on January 10, 2014, Plaintiff filed the present class certification motion. (ECF No. 82.)

On February 10, 2014, Defendant filed an opposition to the class certification motion. (ECF No. 88.) In response to the opposition to the class certification motion, Plaintiff requested the Court conduct a telephonic discovery dispute conference. The Court held a dispute conference on February 21, 2014. (ECF No. 105.) Plaintiff argued that in light of the evidence provided by Defendant in its opposition to the class

4

1  certification motion, that discovery should be re-opened to allow Plaintiff to depose

2  various witnesses, and that Plaintiff be provided further time to file a reply to the

3  opposition to class certification. (Id.) The dispute was not resolved and so the Court

4  authorized Plaintiff to file a motion seeking relief to modify the scheduling order, permit

5  further discovery, and extend the deadline for filing the reply to the certification motion.

6  The Court did not provide Plaintiff additional time to file a reply brief.

7       On March 3, 2014, Plaintiff filed a reply with regard to the class certification

8  motion. On the same date, Plaintiff filed a motion to modify the scheduling order, permit

9  Plaintiff to conduct discovery, and to grant Plaintiff the opportunity to file a sur-reply to

10 the class certification motion. (ECF No. 113.) On March 6, 2014, Defendant filed an

11 opposition to the discovery motion, and on March 13, 2014, Plaintiff filed a reply. (ECF

12 Nos. 118, 123.) On March 17, 2014, the Court took both Plaintiff's motion for certification

13 and motion to reopen discovery under submission. (ECF No. 124.) Accordingly, the

14 matter stands ready for adjudication.

15 **II.    RELEVANT EVIDENCE**

16      Prior to determining whether certification is proper the Court must determine what,

17 if any, evidence should be excluded, and if discovery should be reopened to permit

18 further discovery. As described above, the parties have both filed motions to strike

19 portions of the opposing parties' evidence, and Plaintiff has filed a motion to modify the

20 scheduling order to reopen discovery. The Court shall address the motions below.

21      **A.    Plaintiff's Evidence**

22      In support of her motion for class certification, Plaintiff presents several

23 documents. Plaintiff provides documents from Kmart including Kmart's opening and

24 closing procedure checklists and portions of Kmart's overtime policy. (Decl. of Raul

25 Perez, Exs. A, D, ECF No. 82-1.) Plaintiff provides copies of her deposition transcript

26 and written declaration, the deposition transcript of Aimee Grabau, corporate designee

27 for Kmart, and Kmart's Supplemental Responses to Plaintiff's Interrogatories, Set One.

28 (Id., Exs. B-C, E; decl. of Amie Holak, ECF No. 82-2.) Finally, Plaintiff provides six

1  declarations from class members who were employed at different Kmart stores in

2  California. (ECF No. 82-3.)

3        **B.      Defendant's' Evidence**

4        In opposition of the motion for class certification, Defendant presents several

5  documents. Defendant provides portions of the deposition transcripts of both Plaintiff

6  and Aimee Grabau. (Decl. of Jeffrey Wohl, Exs E-F, ECF No. 89.)  Defendant includes

7  the declaration of Aimee Grabau, to which she attaches copies of relevant sections of

8  Kmart's employees handbook and other policy documents. (Decl. of Aimee Grabau, ECF

9  No. 90.) Finally, Defendant provides the declarations of forty-nine (49) Kmart assistant

10 managers, and ninety-two (92) Kmart hourly associates. (ECF Nos. 91-92.)

11       **C.      Challenges to the Evidence**

12       Both parties dispute the right of the opposing party to present the declarations

13 prepared in support and opposition of the class certification motion. Concurrent with its

14 opposition to the class certification motion, Defendant moved to strike the declarations of

15 the six hourly Kmart associates Plaintiff provided in support of the motion for certification.

16 (ECF No. 95.) Defendant alleges that the declarants were not disclosed before the

17 October 10, 2013 discovery deadline and that Plaintiff did not move to modify the

18 scheduling order to allow for discovery after the deadline. In response to Defendant's

19 motion to strike, Plaintiff filed a motion to modify the scheduling order to re-open

20 certification discovery and allow for further discovery to use support Plaintiff's reply to the

21 certification motion. (ECF No. 113.)

22       Plaintiff also moves to strike Defendant's evidence. Specifically, Plaintiff moves to

23 strike the declarations of Kmart assistant managers and hourly associates provided by

24 Defendant in opposition to the motion for certification because Defendant did not

25 disclose the declarants in a timely fashion as to provide Plaintiff a meaningful opportunity

26 to depose them. (ECF No. 104.)

27              1.      Challenges to Plaintiff's Declarations

28       Plaintiff provides the declarations of six hourly associates in support of her

certification motion. (See ECF No. 82-3.) The parties do not dispute that Plaintiff did not disclose the declarants prior to the October 10, 2013 deadline. The declarants were not disclosed until the filing of the certification motion three months later. Indeed, all the declarations were signed between December 19 and 25, 2013, i.e., after the October 10, 2013 discovery deadline.

a.      Relevant Factual History

As described above, the instant case was filed on January 23, 2012. On July 12, 2012, the parties conferred as required under Fed. R. Civ. P. 26(f)(1) in preparation for filing the joint scheduling report, which was filed two weeks later on July 26, 2012. (ECF No. 33.) Accordingly, the parties were able to commence discovery on July 12, 2012, and proceeded to exchange initial disclosures shortly thereafter on July 26, 2012. (Fed. R. Civ. P. 26(d)(1).

While the parties were entitled to engage in discovery, the scheduling conference was continued for nearly six months because of pending motions before the Court. The conference was held on March 28, 2013, at which time the Court provided another six months for certification discovery, in addition to the nine months during which the parties had already been free to conduct discovery. (ECF No. 70.) In sum, the parties had nearly fifteen months to conduct certification discovery. The parties engaged in a discovery dispute conference in July, 2013, but took no further action until after the filing of the class certification motion.

b.      The Parties' Contentions

Defendant contends that the Court, in the March 29, 2013 scheduling order, specifically set a discovery deadline for class certification issues on October 10, 2013, and that no "information or documents discovered or produced" after that date would be considered by the court. (ECF No. 70 at 2.) Further, the Court informed the parties that the duty to provide supplemental disclosures under Fed. R. Civ. P. 26(e) would be "strictly enforced." (Id.)

Despite the duty to provide disclosure of potential witnesses, Defendant argues

7

1   that Plaintiff did not disclose the names of the six declarants. In her initial disclosures,

2   Plaintiff only discloses witnesses besides herself as "putative class members" and

3   "supervisory and managerial" employees of Kmart. (Wohl Decl., Ex. G.) Despite having

4   the duty to provide relevant discovery and supplement discovery, Plaintiff did not

5   disclose the witness. Further, Defendant asserts that the discovery was conducted after

6   the discovery deadline imposed by the Court on October 10, 2013.

7       In response, Plaintiff asserts that Defendant was not prejudiced by the delay in

8   disclosing the witnesses because Plaintiff was willing to make the declarants available

9   for deposition and that, in any event, Defendant had access to contact information for all

10  of its employees. Finally, Plaintiff asserts that the Court's scheduling order does not

11  require Plaintiff to disclose declarants that were used in support of the class certification

12  motion.

13                          c.      Analysis

14      First, the Court must determine if the declarations were other than authorized by

15  the Court's scheduling order. Plaintiff asserts that the March 29, 2013 scheduling order

16  referred to information and documents, but not witnesses. Therefore Plaintiff believes

17  that it was permissible to use the declarations signed after the October 10, 2013

18  discovery deadline.

19      The Court's Scheduling Order states that "all information and documents" used for

20  purposes of certification must have been discovered or produced by October 10, 2013.

21  "Information" and "documents" are very expansive terms. One would expect the term

22  "information" reasonably to include the name and identity of any witnesses whose

23  testimony is offered in support or opposition of certification.

24      Any doubt should have been put to rest by the language of the scheduling order.

25  The court directed the parties to "complete Discovery related to [class certification

26  issues] on or before October 10, 2013." and  explained that "[a]bsent contrary agreement

27  between the parties or further order of this Court, **information and documents**

28  **discovered or produced after that date shall not be included or considered by the**

1   **Court**." (ECF No. 70 at 2. Emphasis added.) Clearly, this meant that everything that a

2   party wanted to rely on in connection with the certification motion had to be "on the

3   table," so to speak, by October 10, 2013. To the extent a party was to rely upon a

4   witness's testimony, the party was required to produce the name and contact information

5   of the witness prior to the discovery deadline.

6       District courts enter scheduling orders in actions to "limit the time to join other

7   parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P.

8   16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and

9   "modify the extent of discovery." Id. Once entered by the court, a scheduling order

10  "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). "A

11  scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly

12  disregarded by counsel without peril." Johnson v. Mammoth Recreations, Inc., 975 F.2d

13  604, 610 (9th Cir. 1992) (internal citation and quotations omitted). Disregard of the terms

14  of the scheduling order "undermine[s] the court's ability to control its docket, disrupt[s]

15  the agreed-upon course of the litigation, and reward[s] the indolent and the cavalier." Id.

16  The district court "is given broad discretion in supervising the pretrial phase of litigation,

17  and its decisions regarding the preclusive effect of a pretrial order . . . will not be

18  disturbed unless they evidence a clear abuse of discretion." C.F. v. Capistrano Unified

19  Sch. Dist., 654 F.3d 975, 984 (9th Cir. 2011) (citing Johnson, 975 F.2d at 607).

20      Defendant correctly asserts that Plaintiff failed to timely disclose the declarants. "If

21  a party fails to provide information or identify a witness as required by Rule 26(a) or (e),

22  the party is not allowed to use that information or witness to supply evidence on a

23  motion, at a hearing, or at a trial, unless the failure was substantially justified or is

24  harmless." Fed. R. Civ. P. 37 (c)(1). Plaintiff has provided no evidence that the

25  declarants were disclosed to Defendant prior to the filing of Plaintiff's certification motion.

26  As such, the witnesses were not disclosed to Defendant prior to the close of class

27  certification discovery on October 10, 2013.

28      Plaintiff argues that her failure to disclose the declarants was substantially

1  justified or harmless because: (1) Defendant was aware that putative class members

2  may present evidence even though no putative class members were named in Plaintiff's

3  disclosures; (2) Defendant had information and access to putative class members, and

4  (3) Defendant had been given the opportunity to depose the declarants.

5        First, Plaintiff argues that she provided in her initial disclosures that putative class

6  members may have discoverable information and that "Defendant was clearly on notice

7  that putative class members may submit evidence in support of Plaintiff's claims." (ECF

8  No. 118 at 5.) Further, Plaintiff argues that Defendant, as the putative class members'

9  employer, had the names and addresses of the putative class members from its

10  employment records. (Id.)

11       Plaintiff did not however provide the name of any putative class members. Rule

12  26 requires parties to provide "the name and, if known, the address and telephone

13  number" of relevant witnesses in the initial disclosures and supplements to the

14  disclosures. Fed. R. Civ. P. 26(a)(1)(A)(i), 26(e)(1). Plaintiff's reference to "putative class

15  members, as alleged in the operative complaint" is insufficient disclosure under Rule 26

16  and clearly so in the factual context of this case. Regardless whether Defendant

17  possessed contact information for all of them, there are a staggering number of

18  employees from the relevant time period. In her certification motion, Plaintiff asserts that

19  there are more than 38,396 putative class members. (Mot. for Cert., p. 13; Perez Decl. ¶,

20  Ex. E at 5.) Without providing the names of the six declarants to Defendant, it would

21  have been practically impossible for Defendant to determine which, among the 38,396

22  putative class members, Plaintiff intended to use to support her allegations for class

23  certification. Just because Defendant may have had payroll records that indicated

24  putative class members, it does not mean it was not surprised or harmed by the failure to

25  disclose the declarants from the thousands of other putative class members. Plaintiff's

26  first two arguments are without merit.

27       Finally, Plaintiff argues that Defendant was not prejudiced because it had the

28  opportunity to depose the declarants. This argument fails for multiple reasons as well.

1    First, the class certification discovery deadline had passed over three months before

2    these declarants were disclosed. Defendants were not entitled to conduct discovery at

3    that time without court approval. Secondly, Plaintiff made the offer to depose the

4    declarants on January 31, 2014, only ten days before Defendant's opposition was due. It

5    is unrealistic to suggest that Defendant would have had the ability to depose the

6    declarants and prepare arguments in opposition based on the evidence elicited from the

7    declarations in ten days.

8         Plaintiff cites cases for the proposition that failure to disclose declarants may be

9    excused if the opportunity to depose them is made available. See Wilson v. Kiewit Pac.

10   Co., 17 Wage & Hour Cas. 2d (BNA) 197, 2010 U.S. Dist. LEXIS 133304, 30-31 (N.D.

11   Cal. Dec. 6, 2010); Ortiz v. CVS Caremark Corp., 2013 U.S. Dist. LEXIS 169854, 28n.1

12   (N.D. Cal. Dec. 2, 2013); In re TFT-LCD Antitrust Litig., 267 F.R.D. 583, 608 (N.D. Cal.

13   2010); McCrary v. Elations Co., LLC, 2014 U.S. Dist. LEXIS 8443, 45-48n.11 (C.D. Cal.

14   Jan. 13, 2014). Each of these cases is inapposite.

15        In Wilson, the plaintiff filed a third amended complaint two weeks before moving

16   for certification on significantly altered classes that ignored six of the causes of action in

17   the third amended complaint. Id. The defendant immediately obtained new declarations

18   to challenge the new claims raised by plaintiff. Id. When plaintiff asserted that the

19   declarants were not disclosed, the court held that defendant did not violate its duty to

20   provide timely supplemental disclosures, but that if it had, it was substantially justified. Id.

21        Here, Plaintiff's claims did not substantially change during the discovery period.

22   Plaintiff did not provide Defendant with witness names initially or at any time during the

23   fifteen month class certification discovery period ending on October 10, 2013. Plaintiff's

24   failure to timely disclose the declarants created undue surprise and prejudice to

25   Defendant. Plaintiff's offer to allow Defendant to depose the declarants shortly before its

26   opposition brief was due and well after the discovery deadline was not a practical means

27   to avoid prejudice in this matter.

28        In each of the other cases relied upon, prejudice arose because the disclosure of

1   the discovery was untimely and prevented the opposing party from the opportunity to

2   depose the witnesses. In one matter, <u>Ortiz v. CVS Caremark Corp.</u>, 2013 U.S. Dist.

3   LEXIS 169854 at 28 n.1, the court found the late disclosure harmless because the

4   opposing party had already deposed several of the witnesses and the rest of the

5   undisclosed declarations were to the same effect. However, in each of the other cases,

6   the disclosure was untimely and prejudicial. Defendant had no meaningful opportunity to

7   depose the witnesses during the discovery period.

8          Plaintiff failed to timely disclose the names and contact of information of the other

9   witnesses before the discovery deadline. Accordingly, declarations of the others are

10  untimely and hereby stricken.

11         2.     <u>Defendant's Declarations</u>

12         Plaintiff contends that the Defendant's 141 witnesses were untimely disclosed. As

13  noted above, Defendant provided supplemental disclosures providing the names and

14  contact information of the 141 witnesses on the last day of the class discovery period.

15  Defendant explains that declarations of forty-nine (49) Kmart assistant managers were

16  obtained in late September and early October, 2013, and disclosed to Plaintiff less than

17  a couple weeks later.

18         All parties have a duty to provide supplemental disclosures "in a timely manner."

19  Fed. R. Civ. P. 26(e)(1)(A). In this case, Defendant disclosed the assistant store

20  manager witnesses within a short period of time after obtaining the declarations.

21  Accordingly, the supplemental disclosures with regard to the assistant managers were

22  timely made. The Court is cognizant that even though the disclosure met the deadline,

23  disclosure on the last day of discovery certainly had the potential to prejudice Plaintiff. If

24  Plaintiff had sought to depose the witnesses, she would have had to solicit a stipulation

25  from Defendant or seek Court approval to modify the discovery deadline. Setting the

26  discovery deadline three months before briefing left time for further limited discovery.

27  However, Plaintiff took no action for **over four months** after receiving the disclosures,

28  and only after the motion briefing period was underway. Plaintiff's inaction in this regard

1   made the last-minute disclosure of the assistant manager witnesses harmless. <u>See e.g.</u>,

2   <u>Fed. Ins. Co. v. Handwerk Site Contractors</u>, 2013 U.S. Dist. LEXIS 54332, *28-29 (M.D.

3   Pa. Apr. 15, 2013) (party "cannot now complain of prejudice in light of its own inaction.");

4   <u>Ellison v. Windt</u>, 2001 U.S. Dist. LEXIS 1347, *7-8 (M.D. Fla. Jan. 24, 2001) ("When, as

5   here, a party fails to promptly seek enforcement of his rights, any prejudice suffered

6   arises largely from the party's own inaction.").

7         While the assistant manager witnesses were timely disclosed, the hourly

8   associate witnesses were not.  Defendant obtained the majority of the hourly associate

9   declarations in May and June, 2013, but waited until the last day of the discovery period,

10  October 10, 2013, to provide Plaintiff supplemental disclosures. By waiting over four

11  months and until the last day of the discovery, Defendant did not provide Plaintiff an

12  opportunity to depose the witnesses. Defendant argues that disclosure of the witnesses

13  was not required because Plaintiff did not place her state wide claims at issue. (ECF No.

14  114 at 11-12.) Admittedly, Plaintiff presented Defendant with little discovery supporting

15  her state wide class claims. But Plaintiff never withdrew or said she intended to withdraw

16  her state wide claims. While Defendant may have been reticent to provide Plaintiff

17  names of Kmart associates at other stores in light of her apparent failure to pursue

18  discovery, its actions were evasive and inappropriate. <u>See</u> Fed. R. Civ. P. 26, Notes of

19  Advisory Committee on 1983 amendments ("Mutual knowledge of all the relevant facts

20  gathered by both parties is essential to proper litigation."); <u>Hickman v. Taylor</u>, 329 U.S.

21  495, 507 (1947) ("Thus the spirit of the rules is violated when advocates attempt to use

22  discovery tools as tactical weapons rather than to expose the facts and illuminate the

23  issues by overuse of discovery or unnecessary use of defensive weapons or evasive

24  responses.").

25        For the foregoing reasons, the court finds that the declarations of hourly

26  associates that were not timely disclosed (i.e. all hourly associates except those from the

27

28

1    Coalinga store[1]) shall be, and hereby are, stricken.

2              3.    Modification of the Scheduling Order

3         Plaintiff also moves to modify the scheduling order to permit discovery regarding

4    the 141 witness declarations provided by Defendant. As the ninety-two (92) Kmart hourly

5    associates declarations have been stricken, the request is only pertinent to the

6    remaining assistant manager declarations.

7         Plaintiff brought this motion upon receipt of Defendant's opposition to the motion

8    for certification with the supporting declarations. Plaintiff contends that she could not

9    have known of the declarations or their contents until that time. (ECF No. 113 at 1-2.) In

10   her motion, Plaintiff asserts that the witnesses' declarations were not disclosed. She

11   does not assert that Defendants failed to disclose the names and contact information of

12   the witnesses.

13             a.    Standard for Modification of the Scheduling Order

14        The Court has broad discretion in supervising the pretrial phase of litigation. C.F.

15   v. Capistrano Unified Sch. Dist., 654 F.3d 975, 984 (9th Cir. 2011); Zivkovic v. S. Cal.

16   Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002). Generally, the Court is required to

17   enter a pretrial scheduling order within 120 days of the filing of the complaint. Fed. R.

18   Civ. P. 16(b). The scheduling order "controls the subsequent course of the action" unless

19   modified by the Court. Fed. R. Civ. P. 16(e). Orders entered before the final pretrial

20   conference may be modified upon a showing of "good cause." Fed. R. Civ. P. 16(b); see

21   also Johnson v. Mammoth Recreations, 975 F.2d 604, 608 (9th Cir. 1992).

22        Rule 16(b)'s "good cause" standard primarily considers the diligence of the party

23   seeking the amendment. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294-95 (9th Cir.

24   2000); Johnson, 975 F.2d at 609. The district court may modify the pretrial schedule "if it

25   cannot reasonably be met despite the diligence of the party seeking the extension." Fed.

26   R. Civ. P. 16 advisory committee's notes (1983 amendment); Johnson, 975 F.2d at 609.

27   _____

28        [1] Defendant asserted that it disclosed the names of all the employees of the Coalinga Kmart to
     Plaintiff prior to the end of the discovery period.

1   Moreover, carelessness is not compatible with a finding of diligence and offers no reason

2   for a grant of relief. Johnson, 975 F.2d at 609. Although the existence or degree of

3   prejudice to the party opposing the modification might supply additional reasons to deny

4   a motion, the focus of the inquiry is upon the moving party's reasons for seeking

5   modification. Id. (citing Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me.

6   1985)). If the moving party was not diligent, the Court's inquiry should end. Id.

7                                    b.       Analysis

8         Plaintiff asserts that there is good cause to reopen discovery because she did not

9   have an opportunity to conduct adequate discovery regarding certification. The Court

10  fails to find merit in this argument. The Court provided the parties over a year to conduct

11  discovery relating to class certification. Nothing before the Courts suggests that one year

12  was less than ample time for Plaintiff to conduct discovery related to class certification.

13  Plaintiff asserts that she is prejudiced as she has not been able to depose the witnesses

14  and provide rebuttal evidence. Plaintiff's position is facially reasonable. In this case,

15  Defendant did not disclose the witnesses until the last day of the discovery period,

16  leaving Plaintiff no time within the discovery period to depose them or otherwise conduct

17  discovery regarding them. However, Plaintiff then delayed over four months after

18  receiving the disclosures to request relief and modification of the scheduling order. In

19  fact, Plaintiff only sought relief upon realizing that Defendant used the evidence obtained

20  from the disclosed witnesses to support its opposition to the class certification motion.

21        The Court finds that Plaintiff's said four month delay is wholly inconsistent with

22  diligence in requesting relief. See, e.g., Pedroza v. PetSmart, Inc., 2012 U.S. Dist. LEXIS

23  189538, 2 (C.D. Cal. Aug. 15, 2012) ("A reasonably diligent party who was non-dilatory

24  in seeking discovery would have sought an extension [at the time of disclosure]");

25  Wartluft v. Feather River Cmty. College, 2010 U.S. Dist. LEXIS 23431, 5 (E.D. Cal. Feb.

26  23, 2010) (plaintiff was not diligent in waiting until three months after the close of

27  discovery to seek relief.).

28        Plaintiff argues the delay was justified because she could not have deposed the

1  witnesses regarding the contents of their declarations until she had received the

2  declarations. (ECF No. 113 at 6-9.)

3        Plaintiff's argument is without merit. The assistant manager witnesses were timely

4  disclosed, albeit at the end of the discovery period. Furthermore, Defendant did not have

5  a duty to provide Plaintiff the witness declarations. "The Federal Rules of Civil Procedure

6  do not require a party who has disclosed potential witnesses to reveal the declarations

7  signed by said witnesses for use in an impending summary judgment motion." Joseph v.

8  Las Vegas Metro. Police Dep't, 2011 U.S. Dist. LEXIS 63954 (D. Nev. June 10, 2011)

9  "Such declarations are considered work product up until the moment they are filed." Id.

10 (citing Intel Corp v. Via Technologies, 204 F.R.D. 450, 451-2 (N.D. Cal. 2001). As the

11 court in Intel Corp. explained:

> 12   when a fact witness is disclosed, all parties are on notice that the
> 13   disclosing side contends the witness has relevant knowledge. All are thus
>     on notice that the disclosing side may well have interviewed the witness
> 14   and may have even obtained a statement. That would be normal practice.
>     Disclosing that fact would only disclose what should be presumed by
> 15   prudent counsel. All parties are free to contact the fact witness and obtain
>     their own statements.
16

17 Intel Corp., 204 F.R.D. at 452. Defendant provided Plaintiff with the names and contact

18 information of the witnesses, yet Plaintiff did nothing until Defendant presented

19 declarations during briefing. Had Plaintiff desired to determine what evidence each

20 witness possessed, Plaintiff could have begun her inquiry in October. Plaintiff's counsel

21 explains that she recently initiated a campaign to contact the hourly associate witnesses,

22 but provides no information why she did not attempt to do so earlier. (Whitte Decl., ¶ 9.,

23 ECF No. 113-1.) As described, the Court has stricken those declarations. With regard to

24 the assistant manager witnesses, Plaintiff has provided no evidence that she has

25 attempted to contact them at any time.

26       Plaintiff was not diligent in seeking a modification of the scheduling order, and

27 therefore has not provided good cause as required under Rule 16. Accordingly, the

28 motion to modify the scheduling order is denied.

1    To summarize the evidentiary rulings:

2    Plaintiff's six witness declarations were not timely obtained or disclosed, and are

3    therefore stricken. Defendant's store manager declarations were timely disclosed, but

4    the hourly employee declarations were not. Accordingly, the hourly store employee

5    declarations, notwithstanding the hourly employees from the Coalinga store that were

6    disclosed earlier, are stricken.  Finally, since Plaintiff has not presented good cause to

7    modify the scheduling order, the modification motion is denied.

8    **III.    LEGAL STANDARD FOR CLASS CERTIFICATION**

9    **A.    Law Governing Class Certification**

10    To obtain class certification, Plaintiff bears the burden of showing she meets each

11    of the four requirements of Federal Rule of Civil Procedure 23(a), together with at least

12    one of the requirements of Rule 23(b). Ellis v. Costco Wholesale Corp., 657 F.3d 970,

13    979-80 (9th Cir. 2011).

14    The four Rule 23(a) requirements are numerosity, commonality, typicality, and

15    adequacy, i.e., (1) the class is so large that joinder of all members is impracticable; (2)

16    there are one or more questions of law or fact common to the class; (3) the named

17    parties' claims are typical of the class; and (4) the class representatives will fairly and

18    adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a);

19    Ellis, 657 F.3d at 980. Defendant does not dispute numerosity or adequacy, and the

20    resolution of this motion therefore hinges on the interrelated questions of commonality

21    and typicality. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982) ("The

22    commonality and typicality requirements of Rule 23(a) tend to merge.").

23    The Court must perform "a rigorous analysis [to ensure] that the prerequisites of

24    Rule 23(a) have been satisfied." Wal–Mart Stores v. Dukes, 131 S. Ct. 2541, 2551

25    (2011) (citation and internal quotation marks omitted). The plaintiff must prove that the

26    proposed class presents common questions of law or fact. Id. at 2550-51. This means

27    that the class members' claims "must depend upon a common contention . . . of such a

28    nature that it is capable of classwide resolution — which means that determination of its

1  truth or falsity will resolve an issue that is central to the validity of each one of the claims

2  in one stroke." Id. at 2551.

3      As for Rule 23(b), Plaintiff contends the proposed class satisfies the third prong

4  because "the questions of law or fact common to class members predominate over any

5  questions affecting only individual members, and that a class action is superior to other

6  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

7  23(b). "While Rule 23(a)(2) asks whether there are issues common to the class, Rule

8  23(b)(3) asks whether these common questions predominate. Though there is

9  substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding,' and

10  asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by

11  representation.'" Wolin v. Jaguar Land Rover North America, 617 F.3d 1168, 1172 (9th

12  Cir. 2010) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct.

13  2231, 138 L. Ed. 2d 689 (1997)). To answer this question, the Court must "probe behind

14  the pleadings." Wal–Mart, 131 S. Ct. at 2551 (citation and internal quotation marks

15  omitted). The plaintiff must "satisfy through evidentiary proof at least one of the

16  provisions of Rule 23(b)." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 185 L. Ed. 2d 515

17  (2013).

18          **1.      Rule 23(a) Prerequisites**

19              a.      Numerosity

20      A class must be "so numerous that joinder of all members is impracticable." Fed.

21  R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and

22  imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330 (U.S.

23  1980). Courts interpreting the numerosity requirement have identified a variety of factors

24  relevant to whether joinder of all class members would be impracticable.

25          Though different courts label and group the considerations differently, they
          include: (1) the number of individual class members; (2) the ease of
26          identifying and contacting class members; (3) the geographical spread of
          class members; and (4) the ability and willingness of individual members
27          to bring claims, as affected by their financial resources, the size of the
          claims, and their fear of retaliation in light of an ongoing relationship with
28          the defendant.

18

1   Twegbe v. Pharmaca Integrative Pharm., Inc., 2013 U.S. Dist. LEXIS 100067 (N.D. Cal.

2   July 17, 2013); see also 7A Wright et al., Federal Practice & Procedure § 1762 (3d ed.);

3   McLaughlin, McLaughlin on Class Actions § 4:6; Rubinstein et al., Newberg on Class

4   Actions § 3:11.

5                               b.      Commonality

6          Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P.

7   23(a)(2). This requirement has been construed permissively; not all questions of law and

8   fact need to be common. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

9   "However, it is insufficient to merely allege any common question." Ellis v. Costco

10  Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

11         In Wal-Mart Stores v. Dukes, 131 S. Ct. 2541 (2011), the Supreme Court

12  "recently emphasized that commonality requires that the class members' claims depend

13  upon a common contention such that determination of its truth or falsity will resolve an

14  issue that is central to the validity of each claim in one stroke." Abdullah v. U.S. Sec.

15  Assocs., 731 F.3d 952, 957 (9th Cir. 2013); (quoting Wal-Mart, 131 S. Ct. at 2551)

16  (internal alteration omitted); Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir.

17  2012).

18         "[T]he key inquiry is not whether the plaintiffs have raised common questions,

19  'even in droves,' but rather, whether class treatment will 'generate common answers apt

20  to drive the resolution of the litigation.'" Abdullah, 731 F.3d at 957 (citing Wal-Mart, 131

21  S. Ct. at 2551.). "This does not, however, mean that every question of law or fact must

22  be common to the class; all that Rule 23(a)(2) requires is "a single *significant* question of

23  law or fact." Abdullah, 731 F.3d at 957 (citing Mazza, 666 F.3d at 589) (emphasis in

24  original).

25                               c.      Typicality

26         The typicality requirement demands that the "claims or defenses of the

27  representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P.

28  23(a)(3). Under Rule 23(a)(3)'s permissive standard, "representative claims are typical if

they are reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020. Typicality is generally satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1124 (9th Cir. 2010).

Furthermore "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." <u>Wal-Mart Stores, Inc.</u>, 131 S. Ct. at 2551 n.5. The Supreme Court explained how the elements overlap:

> Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

<u>Id.</u> (citing <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157-158, n.13 (1982)).

d. <u>Fair and Adequate Representation</u>

Absentee class members must be adequately represented for judgment to be binding upon them. <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43 (1940). Accordingly, this requirement is satisfied if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Defendant does not challenge whether the class representative adequately represents the interests of the class members.

**2.    Rule 23(b)(3) Certification**

If an action meets the prerequisites of Rule 23(a), the party seeking class certification must show the action is appropriate under Rule 23(b). <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997). Here, Plaintiffs propose certification under Rule 23(b)(3).

Class certification under Rule 23(b)(3) is an "adventuresome innovation," and

20

1  allows for class certification in cases "in which class-action treatment is not clearly called

2  for as it is in Rule 23(b)(1) and (b)(2) situations." Amchem Prods., 521 U.S. at 615. Thus,

3  a class is maintainable under Rule 23(b)(3) where "questions of law or fact common to

4  the members of the class predominate over any questions affecting only individual

5  members," and where "a class action is superior to other available methods for fair and

6  efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3)

7  predominance inquiry tests whether proposed classes are sufficiently cohesive to

8  warrant adjudication by representation." Amchem, 117 S. Ct. at 2249; Hanlon, 150 F.3d

9  at 1022. Where the issues of a case "require the separate adjudication of each class

10  member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."

11  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001).

12                **3.      Burden of Proof and Evidentiary Submissions**

13          Parties seeking class certification bear the burden of demonstrating that each

14  element of Rule 23 is satisfied, and "must affirmatively demonstrate . . . compliance with

15  the Rule." Wal-Mart Stores, 131 S. Ct. at 2551; Doninger v. Pacific Northwest Bell, Inc.,

16  564 F.2d 1304, 1308 (9th Cir. 1977). The Court must conduct a "rigorous analysis,"

17  which may require the Court "to probe behind the pleadings before coming to rest on the

18  certification question." Wal-Mart Stores, 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at

19  160-61). The Court has an affirmative duty to consider the merits of an action "to the

20  extent that they overlap with class certification issues." Ellis, 657 F.3d at 981 ("a district

21  court must consider the merits if they overlap with the Rule 23(a) requirements") (citing

22  Wal-Mart Stores, 131 S. Ct. at 2551-52; Hanon, 976 F.2d at 509). As a result, the Court

23  may consider material evidence submitted by the parties to determine Rule 23

24  requirements are satisfied. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).

25  **IV.    EVIDENTIARY OBJECTIONS**

26          While the Court may need to delve into the merits, the inquiry is solely for the

27  purpose of determining if certification is proper under Rule 23. Wal-Mart Stores, 131 S.

28  Ct. at 2552 n.6.  Below, the Court shall note in detail how the parties have presented

1   conflicting evidence. However, the analysis of the evidence is merely to determine

2   issues related to certification. The Court, in reviewing declarations submitted by the

3   parties, is not a position to determine the credibility of the given declarant, and therefore

4   it is not possible to make ultimate conclusions regarding liability that would be decided at

5   trial. Instead the Court is focused on the determination whether Plaintiffs have met the

6   burden established under Rule 23.

7        In this vein, each party has attacked the credibility of the declarants provided by

8   the other party. Defendant asserts that statements in Plaintiff Amie Holak's declaration

9   contradict her sworn deposition testimony, are speculative and lack foundation, are

10  vague and ambiguous, and are irrelevant. (ECF No. 98.) Most of the objections relate to

11  contents of the declaration that contradict her deposition testimony or provide insufficient

12  detail regarding how she allegedly performed unpaid work during closing shifts.

13  Defendant objects to the declarations of Plaintiff's other witnesses for the same reasons.

14  (See ECF No. 95.) On the other hand, Plaintiff objects to the form declarations prepared

15  by Defendant's hourly associate witnesses. (ECF No. 112.) The Court is not in a position

16  to ultimately determine the credibility of each of these witnesses' statements based

17  solely on examination of the anecdotal evidence presented and will not do so.

18       Since a motion to certify a class is a preliminary procedure, courts do not require

19  strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of

20  Evidence. See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974) (The class

21  certification procedure "is not accompanied by the traditional rules and procedures

22  applicable to civil trials."). At the class certification stage, "the court makes no findings of

23  fact and announces no ultimate conclusions on Plaintiffs' claims." Alonzo v. Maximus,

24  Inc., 275 F.R.D. 513, 519 (CD. Cal. 2011) (quoting Mazza v. Am. Honda Motor Co., 254

25  F.R.D. 610, 616 (CD. Cal. 2008). Therefore, the Court may consider inadmissible

26  evidence at this stage. Keilholtz v. Lennox Hearth Prods, Inc., 268 F.R.D. 330, 337 n. 3

27  (N.D. Cal. 2010). "The court need not address the ultimate admissibility of the parties'

28  proffered exhibits, documents and testimony at this stage, and may consider them where

1  necessary for resolution of the [Motion for Class Certification]." <u>Alonzo</u>, 275 F.R.D. at

2  519; <u>Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship</u>, 2012

3  U.S. Dist. LEXIS 179611, 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012).

4  Accordingly, the Court overrules the parties' evidentiary objections.  It shall review all the

5  evidence presented, whether admissible or not.

6  **V.      PLAINTIFF'S EVIDENCE**

7          Plaintiff presents evidence in support of two subclasses of non-exempt hourly

8  employees. The first subclass involves workers who were not paid for all hours worked

9  based on either being required to (1) work after clocking out of closing shifts or (2) wait,

10 after having clocked out, for someone to unlock the door so they could leave the store.

11 The second subclass involves Kmart workers that were not provided compliant wage

12 statements. Specifically, Plaintiff alleges that Defendant overstated the overtime rate on

13 some wage statements.

14                  1.      <u>General Polices and Evidence Relating to Uncompensated Work</u>

15         In support of certification, Plaintiff provides several of Kmart's policy documents.

16 (<u>See</u> Perez Decl., Exs. A, C.[2]) Plaintiff provides an "Opening and Closing Checklist for

17 store managers. (<u>Id.</u>, Ex. A.) The document lists things to do at closing to include locking

18 the store doors and "Allowing associates to exit; one associate should walk out with

19 you." Exhibit C describes wage and hour laws and describes how non-exempt

20 employees must be paid for all time worked, must be paid for all overtime accrued, even

21 if unauthorized, and that accurate records must be kept. (<u>Id.</u>, Ex. C.)

22         Plaintiff provides relevant parts of her deposition testimony. (Perez Decl., Ex. B.)

23 In her declaration she states that: "generally everybody" remained after the store closed

24 and that after clocking out she was forced to wait until everyone was ready to leave

25 before she could leave (<u>Id.</u> at 125, 145); that the doors were locked and only

26

---

27         [2] It appears that exhibits C and D to the Declaration or Raul Perez have been juxtaposed. For the
   sake of consistency, the Court shall refer to Kmart's bates stamped document "Kmart-000747" as exhibit
28 C, despite being included as exhibit D.

1    management had a key to unlock the doors (Id. at 132.); that sometimes she helped

2    others with their work after clocking out, but could not clock back in without manager

3    approval (Id. at 135.); and that she would get written up if she worked late and accrued

4    overtime (Id. at 142-143.).

5         Plaintiff also provides a declaration in support of her claims. (Holak Decl., ECF

6    No. 82-2.) She explains that she worked as an hourly employee at the Coalinga Kmart

7    store from July 2008 to February 2010, and from December 2010 to September 2011.

8    (Id. at ¶ 2.) Plaintiff worked several shifts including closing shifts. (Id. at ¶ 5.) When the

9    store closed, the store manager would lock the doors, preventing customers from

10   entering and employees from leaving. (Id. at ¶ 6.) After the store closed, Plaintiff

11   explained that employees were expected to complete all job duties and make sure the

12   store was ready for the opening shift the next day. (Id. at ¶ 7.) Plaintiff explains in her

13   declaration how she was forced to perform work or remain in the store after she clocked

14   out:

15        When I worked the closing shift, I was required clock out at the end of my
          scheduled shift, or clock out when I was done with my own closing shift
16        job duties. However, my managers would not permit me to leave the store
          until all of the closing shift job duties were completed in every area or
17        department of the store. After I had finished my own duties and clocked
          out, I was instructed to help other employees complete their job duties as
18        well. So, even though I had clocked out, I was forced to wait about 20 to
          30 minutes for other employees to complete their closing duties, for my
19        manager to confirm that all closing duties had been completed in each
          department, unlock the doors and let us out all at the same time.
20
21   (Id. at ¶ 8.) As her manager locked the doors, Plaintiff asserts that he was aware that

22   employees remanded in the store performing uncompensated work.

23              2.    Inaccurate Wage Statement Claim

24        Finally, Plaintiff asserts that her "wage statements did not include all applicable

25   hourly rates for overtime in effect during the pay periods when [she] earned a service

26   commission." (Id. at ¶ 12.) As a result, Plaintiff contends that she had to refer to outside

27   sources to figure out how to calculate her overtime rate. (Id.) Plaintiff attached four pay

28   stubs in support of her claim. (Holak Decl., Ex. A.) Three of the pay stubs list Plaintiff's

1   overtime rate as only three to nine cents more than Plaintiff's normal pay rates. (Id.)

2   **VI.    DEFENDANT'S EVIDENCE**

3       Defendant provides several sources of evidence in opposition to summary

4   judgment.

5       First, Defendant provides portions of Plaintiff Holak's declaration. (Wohl Decl., Ex.

6   F.) In the deposition, Plaintiff stated that she worked one closing shift a week for the last

7   three months of her employment. (Id. at 71-72.) She explained that during her closing

8   shifts, after the store closed, she performed various tasks for a half hour to an hour and

9   would then clock out. (Id. at 124-28.) Sometimes after clocking out, she would leave, but

10  sometimes she would then help other employees or wait for the supervisors to let her out

11  of the building. (Id.) Specifically she remembered two or three instances where, after she

12  was done working and had clocked out, she waited roughly a half hour to leave the

13  store. (Id.)

14      Plaintiff explained that she observed other employees waiting on those occasions

15  on which she worked late, but did not know if employees waited or worked off the clock

16  when she was not working. (Wohl Decl., Ex. F at 140.) She also had no knowledge if this

17  occurred at other Kmart stores. (Id.) She did not know if the other employees clocked out

18  early or at the time they left the store. (Id. at 145-46.) When asked whether she was

19  aware of the company policy that it is the responsibility for each employee to record the

20  time he or she works, that employees must never work off the clock, and that employees

21  should obtain approval to work overtime, and that all overtime work must be recorded,

22  Plaintiff answered affirmatively. (Id. at 55-56.)

23      With regard to her wage statements, Plaintiff explained that Kmart had moved to

24  an electronic wage statement while she was working. (Id. at 147-49.) During the time

25  that she worked closing shifts, she was being paid through the electronic system, and

26  she did not look at her wage statements. (Id.)

27      Defendant also presented the declaration of Aimee Grabau, the Format Leader of

28  Human Resources for Kmart Corporation. (Grabau Decl., ¶ 1, ECF No. 90.) She is

1    responsible for human resources and employment functions for Kmart throughout
2    California. (Id. at ¶ 2.) According to Grabau, Kmart prohibits employees from working off
3    the clock and requires that associates be paid for all hours worked, including
4    unapproved overtime. (Id. at ¶ 3.)

5         Grabau also described the method that Kmart employees clocked in and out of
6    work. Kmart associates used cash registers, and since at least January 1, 2008,
7    associates could ask their managers or human resources to make a correction. (Id. at ¶
8    4.) Prior to 2010, if an employee's time records were incorrect, the employee could
9    submit a physical correction form. (Id.) Since 2010, an employee could make corrections
10   to his or her time records by using the timekeeping software on the store's registers or
11   by submitting a physical correction form. (Id.)

12        Grabau explained that Kmart's timekeeping policies were listed in the associate
13   handbook available to associates in physical copy and online. (Id. at ¶ 6.) She also
14   provided relevant sections of the employee handbook and a copy of a policy document
15   "LMT 03 – Punch Time Audit Report (May 2013)" describing procedures for accurately
16   entering and keeping associates' time. (Id. at ¶ 10, Exs. A-E.) Grabau attached copies of
17   training materials provided to managers and supervisors regarding work and pay
18   policies. (Id. at ¶¶ 12-13, Exs. F-I.) All of the documents provided by Grabau instruct
19   employees and supervisors regarding proper timekeeping, including accounting for all
20   time worked.

21        In addition to Grabau's declaration, Defendant presents portions of Grabau's
22   deposition. (See Wohl Decl., Ex. E, ECF No. 89.) There Grabau testified that Kmart
23   associates had the ability to enter the timekeeping systems and change the time that
24   they clocked in and out, and that the changes were then reviewed by supervisors. (Id.,
25   Ex. E at 25-26.) The default of the timekeeping system is to consider changes as
26   approved, and a supervisor reviewed the changes only to ensure that they were correct.
27   (Id.)

28        Defendant supports its contentions with several declarations of employees of the

1   Coalinga Kmart store. William Watts, an assistant manager of the Coalinga store since

2   2002 explained that to ensure accurate timekeeping, Kmart has strictly enforced a policy

3   of not allowing employees to work off the clock. (Watts Decl., ECF No 91-2 at 174-78, ¶

4   6.) He stated that if an employee believes that his or her clock records are incorrect, an

5   employee must make a time correction so that they are accurately paid. (Id.) The

6   timekeeping polices are communicated to hourly associates at orientation, and are

7   provided in the employee handbook. (Id. at ¶ 7.) Watts was not aware of any Kmart

8   corporate policy that directs, condones, or encourages closing-shift supervisors to have

9   employees to clock out and continue to work before leaving the store, and he has never

10  been instructed to engage in such a practice. (Id. at ¶¶ 8-9.)

11       In discussing the closing procedures for the Coalinga store, Watts explained that

12  four cash registers and the service desk may be used as time clocks for employee use in

13  clocking in and out. (Id. at ¶ 10.) The store has two parallel rows of doors at the front of

14  the store. (Id. at ¶¶ 12-14.) At closing, only the outside doors, the doors facing the

15  parking lot, are locked. (Id.) All of the outside doors have a twist lock on the inside of the

16  door, allowing anyone inside the store to lock and unlock the doors. (Id.) One of the

17  outside doors has a keyed lock, facing the outside of the store, allowing a key-carrying

18  employee to lock the store upon leaving and unlock the store upon arriving. (Id.)

19       In general, some closing shift employees finish work and leave before the store is

20  closed. (Id. at ¶¶ 15-23.) Once the store is closed, if there are any customers left in the

21  store, an employee leaves one of the front doors unlocked, and stands by the unlocked

22  door so that they can lock it when the customers exits the store. (Id.) Once all customers

23  have left, Watts instructs the last cashier to take the money from the register and deliver

24  it to the service desk. (Id.) On occasions, the cashier may then clock out and leave

25  before the other employees. If so, another employee or Watts would unlock the exit door

26  to allow the cashier to leave and then re-lock the door. (Id.)

27       When the store is closed and locked, Watts would account for and secure the

28  money in the safe while hourly associates straightened up the store for the next day. (Id.)

1   Upon the store being adequately cleaned, Watts would announce over the intercom that

2   it was time to clock out, and for everyone to collect their belongings and meet at the

3   registers in the front of the store. (Id.) Watts would hold a brief meeting, and then have

4   the employees clock out. (Id.) Upon clocking out, the employees unlock the front door

5   and exit the store. (Id.)

6       After all the employees leave, the loss prevention employee then clocks out as

7   Watts sets the store alarm, and then he and the loss prevention employee exit the store

8   together and lock the door from the exterior using a key. (Id.)

9       While the above process was normally followed, sometimes an employee was

10  instructed to exit before the rest of the employees. (Id. at ¶¶ 24-26.) When this

11  happened, Watts allowed the employee to clock out, he unlocked the front door to allow

12  the employee to exit, and then re-locked the door. (Id.) Further, if an employee could not

13  find Watts, the employee could unlock the door from the inside without a key and exit the

14  store. (Id.) Watts worked at the store during the period Plaintiff was employed, but in a

15  separate department. (Id. at ¶ 28.) Nevertheless, Plaintiff could have contacted him if

16  she had had a problem during the closing of the store. (Id.) Watts had no recollection of

17  Plaintiff complaining to him regarding the closing procedures of the store. (Id.)

18      In addition to the declaration of Watts, Defendant presented the declarations of

19  eight hourly associates either employed or formerly employed at the Coalinga Kmart

20  store. (See Decls. of Sophia Escobar, Estephanie Garcia, Ruben Lopez, James

21  Milstead, Audra Mitchell, Elvia Silva, Maricela Stevens, and Sheila Todd, ECF No. 92,

22  Exs. 25, 32, 46, 56-57, 76, 80, 82.)    All of the hourly associates indicate in their

23  declarations that they never had to wait to leave the store. (Id.) This was because the

24  following reasons: (1) the store doors were not locked at the time the employee clocked

25  out, (2) if the doors were locked, the store manager or another employee unlocked the

26  doors right after the employee clocked out, and (3) the time clock was located in the front

27  of the store, making it easy to exit the store quickly upon clocking out. (Id.) Further, the

28  Coalinga hourly associates stated that they never performed work off the clock for which

28

1   they were not compensated. (Id.)

2        Specifically, hourly associate Estephanie Garcia indicated that she did not have to

3   wait because "[a]t the end of the night, the manager calls the employees to the front of

4   the store, I punch out, and then I leave." (Garcia Decl., ECF No. 92, Ex. 32.)   Hourly

5   associate James Milstead explained that "[t]he doors were not locked on the inside of

6   the store and I could let myself out." (Milstead Decl., ECF No. 92, Ex. 56.) Hourly

7   associate Audra Mitchell indicated that she "could open the locked door [her]self and

8   simply leave." (Mitchell Decl., ECF No. 92, Ex. 57.) Hourly associate Marcella Stevens

9   described the closing procedure consistently with the description given by assistant

10   manager Watts. She explained, "[a]ll employees gather at the front of the store at the

11   end of the night, the manager holds a brief meeting, I clock out, and the manager or

12   another employee unlocks the door, and I walk out." (Stevens Decl., ECF No. 92, Ex.

13   80.) Hourly associate Sheila Todd explained that "[s]ecurity is by the door to let me out."

14   (Todd Decl., ECF No. 92, Ex. 82.)

15   **VII.   ANALYSIS**

16        **A.   RULE  23(a) REQUIREMENTS**

17             1.   Numerosity

18        Plaintiff asserts that the class consists of 38,396 employees that worked for

19   Defendants as hourly or non-exempt employees from 2008 to 2012. (See Perez Decl.,

20   Ex. E.) Defendants do not dispute numerosity. As the potential class consists of tens of

21   thousands of employees, the Court holds that the numerosity requirement is met.

22             2.   Commonality

23                  a.   Uncompensated Work Sub-Class

24        Plaintiff asserts that the subclass presents a common factual question, namely

25   "whether employees worked off-the-clock after their shift ended." (Mot. for Certification,

26   ECF No. 82 at 8.) While Defendant's policies clearly required employees to accurately

27   record their time, and that all time worked is paid, Plaintiff contends that Defendant had a

28   policy of forcing employees who were clocked out to remain either working or waiting in

1    the locked store until management released all employees. (See Reply at 3-6.) Plaintiff

2    claims that employees are "in effect trapped by Kmart until Kmart doors are unlocked

3    and they are permitted to leave."  (Id.) Further, Plaintiff claims that the policies require

4    employees to clock out at the end of their shift and the time system prohibits employees

5    from clocking out outside of the scheduled time without manager approval. (See Grant

6    Decl., Ex. 2.)

7                                    i.      Analysis

8            Under California law, an employer must pay an employee for all "hours worked,"

9    which is defined as "the time during which an employee is subject to the control of an

10   employer, and includes all the  time the employee is suffered or permitted to work,

11   whether or not required to do so." Morillion v. Royal Packing Co., 22 Cal. 4th 575, 94

12   Cal. Rptr. 2d 3, 995 P.2d 139, 141 (Cal. 2000) (quotation omitted). Under this rule, an

13   employer is deemed to have "suffered or permitted [an employee] to work" if it knew or

14   should have known that its employees were working off-the-clock. Id. at 145. [3]

15   Accordingly, the common question relating to whether Defendant's policies or practices

16   permitted uncompensated work is congruent with the relevant legal standard for

17   uncompensated work.

18          The Court holds that the subclass, on its face, presents "a common contention

19   such that determination of its truth or falsity will resolve an issue that is central to the

20   validity of [the] claim in one stroke" as required under Wal-Mart. See Abdullah v. U.S.

21   Sec. Assocs., 731 F.3d at 957. Here, the common question is whether the class

22   members performed uncompensated and unrecorded work after the closing of the store.

23   At trial, should Plaintiff prove the truth of the contention that uncompensated work was

---

24          [3] "[T]he California Labor Commissioner notes that the time the employee is suffered or permitted
25   to work, whether or not required to do so can be interpreted as time an employee is working but is not
     subject to an employer's control. This time can include work such as unauthorized overtime, which the
26   employer has not requested or required. Work not requested but suffered or permitted is work time. For
     example, an employee may voluntarily continue to work at the end of the shift. The employer knows or has
27   reason to believe that he is  continuing to work and the time is working time." Morillion at 145 (citations and
     internal punctuation omitted).

28

performed, she would establish the central common issue regarding liability for the claim.

a.    Kmart's Policies

Plaintiff contends that Kmart's uniform policy required employees, at the end of a shift, to clock out and remain in the store under the control of Kmart until a manager gave them permission to leave. (ECF No. 82 at 7.) Specifically, Plaintiff describes the alleged uniform polies of Kmart that led to uncompensated work being performed:

> Kmart is liable to subclass members for maintaining closing policies requiring closing-shift employees to be locked in the stores at closing time, but do not require closing managers to allow them to leave store premises immediately after clocking out. Instead, Kmart's undisputed corporate policies (1) require subclass members to clock-out at the end of their shift; (2) require closing managers to lock the doors when their stores close and then perform various closing tasks—one of which is to allow employees to exit the store; and (3) permit managers to establish their own closing procedures or routine for performing required closing tasks. As a result, until they are permitted to exit, subclass members are obligated to remain on the store premises under Kmart's control and are not compensated for this time.

(ECF No. 109 at 1.) Plaintiff further asserts that it is "Kmart's lack of a uniform class-wide closing policy requiring employees to be permitted to leave store premises immediately after clocking-out that violates California minimum wage laws." (Id. at 1-2.) In support of certification, Plaintiff relies upon her own declaration and several documents regarding Kmart's policies and procedures. (ECF No. 82 at 7-8.)

Plaintiff provides an opening and closing checklist for store managers and directors. (Perez Decl., Ex. A, ECF No. 82-1.) In pertinent part, the checklist instructs managers to "lock all perimeter doors," "lock the front door," ensuring that all customers have left the store, and that the money is placed in safe. (Id.) The checklist further instructs the manager to "[a]llow associates to exit"  and that "one associate should walk out with you." (Id.)

Defendants' employee handbook explains that employees must record all work performed, regardless of failure to obtain prior approval:

> Associates must accurately record the time they start and end work, as well as the beginning and ending time of each meal period. The Company is obligated to pay for all time worked, which means associates should never work off the clock regardless of the circumstances. Working

1

2
off the clock is strictly prohibited and should be reported immediately if an associate believes it has occurred. Associates also should obtain prior management approval before working overtime. All overtime work must be recorded, regardless of whether the associate obtained prior approval.

3

4

5

6

7
Altering, falsifying, or tampering with timekeeping records or devices (including punching in or out for another associate), working off the clock or working overtime on an unauthorized basis or any other violation of the Company's pay for work policies and rules may result in disciplinary action, up to and including termination. Associates who need a correction or modification to a time record must report the change to their manager or human resources representative as soon as reasonably possible.

8

9

10

11

12

13
(See Grabau Decl., ¶¶ 3-6, 9, Exh. C, ECF No. 90.) If time records were incorrect and did not accurately reflect the hours of time worked, then managers and members of human resources could make a "punch correction" to correct the time records. (Id. at ¶ 4.) Furthermore, during the relevant period employees were able to submit physical time correction forms, and since 2010, employees could submit a time correction through the timekeeping software at the store's registers. (Id.)

14

15

16

17

18

19

20

21

22

23

24

25

26
None of the evidence provided shows that Kmart had a policy, as Plaintiff asserts, of requiring closing-shift employees to remain in the store after clocking-out and until permitted to leave by a supervisor. The manager opening and closing checklist clearly explains that managers should lock the store doors upon the closing of the store, and that the manager should at some unspecified time later let the associates leave. (Perez Decl., Ex. A.) However, the checklist provides no guidance and is silent regarding when managers should allow employees to clock out, and whether the associates should remain in the store after clocking out. Accordingly, the checklist does not provide favorable support for Plaintiff's position regarding the alleged policy of requiring off-the-clock work.[4] Further, Kmart's policies, as indicated by presentation materials and the employee handbook, indicate that associates are to accurately record all time worked. (Perez Decl., Ex. D; Grabau Decl., ¶¶ 3-6, 9, Exh. C.)

Plaintiff attaches to her reply further documentation regarding Kmart's policies

27

28
[4] Nor does the checklist provide favorable support to Defendant's position that hourly employees clock-out immediately before leaving.

1   regarding timekeeping. (See Grant Decl., ECF No. 109, Exs. 1-2.) These documents

2   similarly fail to support the contentions raised by Plaintiff. The documents confirm that

3   hourly associates must accurately record hours worked, and that clocking out at a time

4   that does not conform with a scheduled shift requires manager approval. (Id.) While

5   clocking out after the end of a scheduled shift requires manager approval, the document

6   notes that a manager need not approve the "punch" when made. The manager need

7   only approve the "punch" prior to the end of the workweek. (Id.) While Plaintiff is correct

8   that Kmart does not have a specific policy stating that a manager must immediately

9   unlock the store doors to allow employees to leave upon clocking out, nothing in the

10   company policies support Plaintiff's contention that the policy is for managers to keep

11   employees in the store after they clocked out of their shift.

12        Plaintiff argues that despite having a policy prohibiting off-the-clock work, a class

13   can still be certified if it is shown that Defendants acted inconsistently with the stated

14   policies and allowed off-the-clock work to be performed. (See Reply at 6-7.) The Court

15   agrees with that general proposition. Here, the policies alone do not provide favorable

16   support for the claim that hourly associates indeed performed off-the-clock work. To

17   make a favorable showing that common questions exist regarding whether associates

18   performed off-the-clock work during closing shifts, evidentiary support must come from

19   other sources, specifically the anecdotal evidence of the employees.

20                   b.    Employees' Declarations

21        As described above, Plaintiff states in her declaration that she was required to

22   clock out at the end of her scheduled shift or when finished with her job duties. (Holak

23   Decl. at ¶ 8, ECF No. 82-2.) After clocking out, she had to either wait or help other

24   employees finish their job duties before leaving the store. (Id.) Of specific note, Plaintiff

25   explained in her deposition that only the managers had keys to unlock the store doors

26   that could not be otherwise opened once locked. (Perez Decl, Ex. B, ECF No. 82-1 at

27   132.) When asked why she did not attempt to make a punch correction to include the

28   additional time spent at work, Holak stated that she attempted to, but the computer

1   system required manager approval to do so. (<u>Id.</u> at 136.) She did not seek manager

2   approval because she "just wanted to get out of there." (<u>Id.</u>) She also stated that the

3   reason that she did not wait until she was to be let out of the store to clock out was

4   because if she clocked out late, she could get an administrative write-up. (Id. at 142-43.)

5        Despite her testimony regarding uncompensated work, Holak explained that she

6   understood that it was a company policy for employees to accurately record the time

7   worked, and that work off the clock was not permitted. (Wohl. Decl., Ex. F at 55-56, ECF

8   No. 89.) She also revealed that she had only worked approximately twelve closing shifts

9   during her employment. (<u>Id.</u> at 71-72.) Plaintiff was also not aware if the same alleged

10  practices occurred at other K-mart stores. (<u>Id.</u> at 141.)

11       Defendant provides anecdotal evidence in the form of declarations from one

12  assistant manager and eight employees; they  provide different accounts of the closing

13  procedures. (<u>See</u> ECF No. 91, Ex. 48, ECF No. 92, Exs. 25, 32, 46, 56-57, 76, 80, 82.)

14  As described above, assistant manager William Watts explained that employees were

15  allowed to leave upon clocking out, even if the rest of the employees were not ready to

16  leave. (Watts Decl., ECF No. 91.) Watts further explained that Kmart has a policy that

17  employees must record all time worked and make time corrections if the time records are

18  not accurate. (<u>Id.</u> at ¶ 6.)

19       In marked contrast to Holak's claim, Watts explained that the front doors of the

20  Coalinga Kmart store had a twist lock on the inside of the store, allowing anyone in the

21  store to unlock the doors from the inside. (<u>Id.</u> at ¶ 13.)

22       In addition, Defendant presents the declarations of eight hourly associates

23  employed at the Coalinga Kmart during the relevant period who did not share the

24  Plaintiff's experiences regarding off-the-clock work during closing shifts. (<u>See</u> Decls. of

25  Sophia Escobar, Estephanie Garcia, Ruben Lopez, James Milstead, Audra Mitchell Elvia

26  Silva, Maricela Stevens, and Sheila Todd, ECF No. 92, Exs. 25, 32, 46, 56-57, 76, 80,

27  and 82.) In general, the hourly associates explained that they did not perform off-the-

28  clock work and were not prevented from leaving the store after shifts ended.. The

1    associates stated that they did not have to wait to leave the store because the doors

2    either were not locked, or someone such as a manager or other employee would unlock

3    the doors after the employee clocked out.

4                                    c.      Analysis

5          In viewing the declarations of the employees of the Coalinga Kmart, the Court is

6    presented with Plaintiff's declaration stating that she performed off the clock work, and

7    the declarations of one assistant manager and eight hourly associates that uniformly

8    state that employees were not kept in the store performing uncompensated work during

9    closing shifts.

10         Plaintiff has provided no testimony, besides her own, that the practice or polices

11   at the Coalinga Kmart store required hourly associates to perform off-the-clock work

12   during closing shifts. Her testimony alone is not substantial proof that the purported class

13   of hourly associates performed uncompensated work. See Wal-Mart Stores, Inc. v.

14   Dukes, 131 S. Ct. at 2553-54 (Describing how "significant proof" of a wrongful

15   employment action can establish the commonalty requirement of Rule 23.). Evidence

16   that Plaintiff alone performed uncompensated work does not establish or even create an

17   inference that all other store employees suffered from the same wage practices.

18   Moreover, Plaintiff has not provided any other admissible evidence that similar wage

19   practices occurred at other Kmart stores in California.

20         Plaintiff attempts to argue that the fact that members of the class may have not

21   engaged in uncompensated work does not defeat certification because the presence of

22   individualized damage inquires alone is not a basis to defeat certification. See Leyva v.

23   Medline Indus., 716 F.3d 510, 514 (9th Cir. 2013). While individualized inquires with

24   regard to damages will not defeat certification, the issue of whether there is common

25   liability of class members is directly relevant to the commonality inquiry. See Kurihara v.

26   Best Buy Co., 2007 U.S. Dist. LEXIS 64224, 25-26 (N.D. Cal. Aug. 29, 2007) ("[C]ourts

27   are comfortable with individualized inquires as to damages, but are decidedly less willing

28   to certify classes where individualized inquiries are necessary to determine liability.")

1    Plaintiff provides several cases in which claims were certified based on strong

2    evidence of uniform policy, despite declarations from defendants describing otherwise.

3    See Kurihara v. Best Buy Co., 2007 U.S. Dist. LEXIS 64224; In re Autozone, Inc., 289

4    F.R.D. 526 (N.D. Cal. 2012); Vedachalam v. Tata Consultancy Servs., Ltd., No. 06-0963,

5    2012 U.S. Dist. LEXIS 46429, at *37-*39 (N.D. Cal. April 2, 2012); In re Taco Bell Wage

6    & Hour Actions, No. 07-1314, 2012 U.S. Dist. LEXIS 168219, 2012 WL 5932833, at *6

7    (E.D. Cal. Nov. 27, 2012). Unlike the parties in those cases, Plaintiff has provided little

8    evidence of a uniform policy that would adversely affect potential class members. In

9    Kurihara v. Best Buy Co., Inc., No. 06-1884, 2007 U.S. Dist. LEXIS 64224 MHP, at *6

10   (N.D. Cal. Aug. 30, 2007), the court acknowledged that "a mere allegation of a company-

11   wide policy does not compel class certification," but it noted that the plaintiff there had

12   "provided substantial evidence of a company-wide policy where employees are subject

13   to inspections, and are not compensated for the time spent on those inspections." Id. at

14   *29. The court concluded, "Although Plaintiff has submitted little or no evidence as to the

15   implementation of that policy, the detailed nature of the policy itself, and the reasonable

16   inferences which can be drawn from them, constitute sufficient evidence to satisfy

17   plaintiff's burden." Id. Such is not the case here. Nothing in Kmart's polices explicitly

18   states or infers that the alleged policy exists, and Plaintiff only presents her own

19   declaration explaining her experiences wile closing at one Kmart store.

20   Plaintiff has failed to present substantial evidence of commonality with regard to

21   the uncompensated work subclass. The evidence shows that to the extent post-shift

22   work was performed at all, many hourly employees in the Coalinga Store did not engage

23   in it. Moreover, Plaintiff has not provided admissible evidence of such practices occurring

24   at other Kmart stores. The rather detailed declaration of the closing procedure of the

25   Coalinga Kmart store by assistant manager William Watts is persuasive in showing that

26   there are individual questions regarding liability to potential class members. Plaintiff has

27   not established that uncompensated work is a common issue affecting an entire sub-

28   class. As Plaintiff has not shown that common issues affect the class, the Court need not

1  address the other requirements for class certification under Rule 23. Accordingly, the

2  Court shall deny Plaintiff's motion to certify this subclass.

3                          b.      Accurate Wage Statements

4                          i.      Parties' Contentions and Evidence

5          Plaintiff contends that Defendant's wage statements do not state the correct

6  overtime rates and therefore violate California Labor Code § 226(a)(9). Specifically,

7  Plaintiff contends that her pay statements do not accurately state her overtime rate in

8  weeks in which she earned both overtime and service commissions. Plaintiff provides in

9  her declaration copies of four of her wage statements for the weeks ending on July 11

10  and November 28, 2009 and February 26 and April 23, 2011. (ECF No. 82-2 at 7-11.)

11  The wage statements list Plaintiff's overtime wage rate as $9.28, $9.34, $9.31, and

12  $13.85. As Plaintiff's regular wage rate was $9.25, the first three wage statements

13  incorrectly state Plaintiff's overtime wage rate as only a few  cents higher than her

14  regular wage. However, if simple calculations are made, it is apparent from the

15  information contained on the pay stubs that the overtime rate listed was incorrect.

16          For example, on Plaintiff's July 11, 2009 pay stub, it states that Plaintiff's overtime

17  pay rate was $9.28, and that she worked 7.5 overtime hours, and was paid $104.16 for

18  that time. When the amount of pay is divided by the hours worked, it shows that

19  Petitioner was paid $13.89 per hour for overtime work for that time period, not $9.28.

20  Additionally, when calculated, the overtime pay rate for the November 28, 2009 pay

21  period was $13.92, and the overtime pay rate for the February 26, 2011 pay period was

22  $14.00 per hour.  The final pay stub for the April 23, 2011 period accurately stated

23  Plaintiff's overtime pay rate as $13.85 per hour.  In her pleadings, Plaintiff admits that

24  while the overtime rate listed was incorrect, the amount of actual overtime paid may

25  have been correct.[5] (See Cert. Mot., ECF No. 82 at 4, n.4.)

26  _____

27          [5] Plaintiff also provides the pay stubs of declarant Tanya Meyers. (ECF No. 82-3 at 15-21.) While
the declaration was stricken, and not to be considered with regard to the adjudication of this motion, it is
noted that Meyer's pay stub for the week of July 28, 2012 states that her overtime pay rate of $8.55 was

28  only five cents higher than her regular pay rate of $8.50 per hour.  However, when calculated, the overtime
(continued…)

1

ii.    California Labor Code Section 226

2     California Labor Code Section 226(a)(9) states, in relevant part: "Every employer

3 shall… furnish each of his or her employees… an accurate itemized statement in writing

4 showing… (9) all applicable hourly rates in effect during the pay period and the

5 corresponding number of hours worked at each hourly rate by the employee." Section

6 226(e) grants payment of a penalty to an employee "suffering injury as a result of a

7 knowing and intentional failure by an employer to comply with subdivision (a)."  Finally,

8 section 226(e) describes that an employee has suffered an injury in the following

9 manner:

10        (B) An employee is deemed to suffer injury for purposes of this
subdivision if the employer fails to provide accurate and complete
11     information as required by any one or more of items (1) to (9), inclusive, of
subdivision (a) and the employee cannot promptly and easily determine
12     from the wage statement alone one or more of the following:

13        (i) The amount of the gross wages or net wages paid to the employee
during the pay period or any of the other information required to be
14     provided on the itemized wage statement pursuant to items (2) to (4),
inclusive, (6), and (9) of subdivision (a).

15
Cal. Labor Code § 226(e)(2)(b).
16

17     Labor Code Section 226 requires the employer to keep accurate and itemized pay

18 statements setting forth gross wages, the actual number of hours and minutes worked,

and all applicable hourly rates of pay. Plainitiff has shown that some of her wage
19
statements inaccurately state her overtime rate.
20

21     Plaintiff must also be able to prove that she suffered an injury as a result of the

22 improper wage statements. See Cal. Lab. Code § 226.

23     However, the parties disagree about the type of injury that is necessary in order to

state a claim under section 226. Plaintiffs assert that the injury requirement is minimal.
24
See, e.g., McKenzie vs. Fed. Express Corp., 275 F.R.D. 290, 299-300 (C.D. Cal. 2011)
25
("[B]ecause [Defendant]'s inaccurate and incomplete wage statements require …
26

27 _____

(…continued)
28 rate paid to Meyers was $12.75 per hour.

38

1    employees to engage in discovery and refer to outside sources to verify whether their

2    pay is correct, the proposed class can prove on a class-wide level that they suffered an

3    injury under section 226(e)."); Perez v. Safety-Kleen Sys., Inc., Nos. C 05-5338, 07-

4    0886, 2007 U.S. Dist. LEXIS 48308, 2007 WL 1848037, at *9 (N.D. Cal. June 27, 2007)

5    (merely filing the "lawsuit, and the difficulty and expense Plaintiffs have encountered in

6    attempting to reconstruct time and pay records . . . is evidence of the injury").

7         Defendant argues the contrary, but this Court agrees that "the injury requirement

8    should be interpreted as minimal in order to effectuate the purpose of the wage

9    statement statute; if the injury requirement were more than minimal, it would nullify the

10   impact of the requirements of the statute." See Seckler v. Kindred Healthcare Operating

11   Grp., Inc., SACV 10-01188 DDP, 2013 U.S. Dist. LEXIS 29940, 2013 WL 812656, at *12

12   (C.D. Cal. Mar. 5, 2013); see also Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d

13   1042, 1050-51 (C.D. Cal. 2006) (stating the purpose of Section 226's information

14   requirement).

15        Furthermore, a recent statutory amendment to Section 226 provides a statutory

16   definition for injury:

17       Section 226(e) now states that "[a]n employee is deemed to suffer injury . .
         . if the employer fails to provide accurate and complete information as
18       required by one or more of [the section (a) requirements] and if the
         employee cannot promptly and easily determine from the wage statement
19       alone . . . (i) The amount of gross wages or net wages . . . (ii) Which
         deductions the employer made from gross wages to determine the net
20       wages . . ." The Senate Bill Analysis indicates that because of the
         "contradictory and inconsistent interpretations of what constitutes
21       'suffering injury' . . . in the various court cases . . . it is necessary to
         provide further clarity on the issue . . ."
22

23   Seckler, 2013 U.S. Dist. LEXIS 29940, 2013 WL 812656, at *12 (internal citations

24   omitted) (alterations in original). This amendment reinforces the Court's interpretation of

25   the injury requirement under Section 226. See id.

26        Accordingly, the Court finds that Plaintiff's inability to determine her hourly wage

27   meets the minimal-injury requirement of Section 226. Determining whether an incorrect

28   overtime rate was present on pay records is not an individualized inquiry as the facts can

1    easily be derived through pay records.

2                                    ii.        Analysis

3                                         a.        Failure to Plead the Wage Statement Theory

4           Defendant first asserts that Plaintiff is not entitled to certification based on the

5    wage statement claim because Plaintiff only asserted a derivative wage statement claim

6    in the second amended complaint. Specifically, Defendant asserts that Plaintiff's claim is

7    based on the alleged failure of Defendant to state the hours and wage worked based on

8    the lack of compensation for post-shift work time. Instead, Plaintiff moves to certify a

9    wage statement claim based on the failure to properly state the overtime rate on some

10   pay statements.

11          Plaintiff has filed two amended complaints, however throughout this litigation,

12   Plaintiff's fourth cause of action for non-complaint wage statements has remained the

13   same. (See ECF No. 52 at 14-15.) Plaintiff alleges that :

14          Defendants have intentionally and willfully failed to provide employees
            with complete and accurate wage statements. The deficiencies include,
15          among other things, the failure to accurately list the total hours worked by
            Plaintiff and class members and the applicable hourly rates, as a result of
16          Defendants' failure to capture the hours Plaintiff and class members
            worked off the clock while waiting to be let out of Defendants' stores after
17          a closing shift.

18   (Second Amended Complaint ["SAC"] at ¶ 65.) Plaintiff further explains in the SAC the

19   basis for the claim:

20          Specifically, Plaintiff and class members have been injured by Defendants'
            intentional violation of California Labor Code section 226(a) because they
21          were denied both their legal right to receive, and their protected interest in
            receiving, accurate, itemized wage statements under California Labor
22          Code section 226(a). In addition, because Defendants failed to provide the
            accurate number of total hours worked on wage statements, Plaintiff has
23          been prevented by Defendants from determining if all hours worked were
            paid and the extent of the underpayment. Plaintiff has had to file this
24          lawsuit, conduct discovery, reconstruct time records, and perform
            computations in order to analyze whether in fact Plaintiff was paid
25          correctly and the extent of the underpayment, thereby causing Plaintiff to
            incur expenses and lost time. Plaintiff would not have had to engage in
26          these efforts and incur these costs had Defendants provided the accurate
            number of total hours worked. This has also delayed Plaintiff's ability to
27          demand and recover the underpayment of wages from Defendants.

28   (SAC at ¶ 67.)

                                              40

1    Defendant relies upon several district court cases for the proposition that courts
2    should not certify claims not pled in the operative complaint. <u>See</u> <u>Brown v. Am. Airlines,</u>
3    <u>Inc.</u>, 285 F.R.D. 546, 560 (C.D. Cal. 2011); <u>Evans v. IAC/Interactive Corp.</u>, 244 F.R.D.
4    568, 579 (C.D. Cal. 2007); <u>Munoz v. Giumarra Vineyards Corp.</u>, 2012 WL 2617553, at
5    *17 (E.D. Cal. July 5, 2012). The Court finds the cases and simple logic of Defendant's
6    argument persuasive. However, the question presented is whether Plaintiff did indeed
7    allege her innacurate wage state claim in the operative complaint.

8    Plaintiff focuses on the fact that she first set forth the generic language of a non-
9    complaint wage claim in stating in the complaint that "Defendants have intentionally and
10   willfully failed to provide employees with complete and accurate wage statements. The
11   deficiencies include, among other things, the failure to accurately list the total hours
12   worked by Plaintiff and class members and the applicable hourly rates…" On the other
13   hand, Defendant correctly notes that Plaintiff continues the description to state that the
14   reason for the non-compliant wage statements was the failure to record off-the-clock
15   work. Defendant's argument carries more weight. In the complaint, Plaintiff explained
16   that the non-complaint wage statements were "a result of Defendants' failure to capture
17   the hours Plaintiff and class members worked off the clock while waiting to be let out of
18   Defendants' stores after a closing shift." The manner in which the complaint was
19   phrased gave Defendant no notice of claims that the overtime rate was incorrectly stated
20   separate and apart from incidents relating to failure to account for hours worked after
21   clocking out. As Plaintiff did not plead the claim in her complaint, it would be
22   inappropriate to certify a class based on the claim. <u>See, e.g.</u>, <u>Anderson v. United States</u>
23   HUD, 554 F.3d 525, 528 (5th Cir. 2008). As the Court has not set a deadline for
24   amendments to the complaint, it is quite possible that leave may be granted to amend
25   the complaint to add the present claim, thereby making it procedurally appropriate to
26   address certification of the claim. <u>Id.</u> ("[T]his problem may be remedied on remand by
27   allowing the [plaintiffs] to amend their complaint…"). Accordingly, the Court shall
28   determine if the subclass should be certified.

1

### b.    Rule 23 Requirements

2     Alternatively, Plaintiff's motion to certify the instant claim is not appropriate as

3 Plaintiff has not presented sufficient evidence of commonality or that those common

4 questions predominate the inquiry. In support of her motion for certification, Plaintiff

5 provides only several of her pay statements indicating that the overtime rate was

6 incorrect. In response, Plaintiff provides declarations of eight Kmart employees from the

7 Coalinga store that stated that they were provided pay statements that accurately stated

8 both the hours worked and the hourly wage rate. (ECF No. 92, Exs. 25, 32, 46, 56-57,

9 76, 80, 82.) While Plaintiff claims that the wage statements errors were "systematic,"

10 Plaintiff fails to provide admissible evidence from any other employees to support the

11 claim that the injury was common to all class members. Plaintiff had access to all the

12 employees of the Coalinga Kmart store, but failed to provide evidence from other

13 putative class members of inaccurate wage statements.

14     Plaintiff relies upon several cases to show that courts have certified classes

15 based on inaccurate wage statement claims. See McKenzie v. Fed. Express Corp., 275

16 F.R.D. 290, 298 (C.D. Cal. 2011); Jaimez v. Daiohs USA, Inc., 181 Cal. App. 4th 1286,

17 1294 (Cal. App. 2010). Unlike the above cases, Plaintiff has provided less proof that of

18 common injury. In McKenzie, the plaintiff provided evidence to the court that defendants

19 provided all hourly employees identical wage statements containing inaccuracies.

20 McKenzie, 275 F.R.D. at 296. In Jaimez, plaintiff provided a declaration along with

21 declarations of nine other employees alleging the injuries at issue. Jaimez, 181 Cal. App.

22 4th at 1294. Plaintiff here has not provided any other admissible evidence to show that

23 other employees received inaccurate wage statements. Her testimony alone is not

24 substantial proof that the purported class of hourly associates received inaccurate wage

25 statements. See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2553-54 (Describing how

26 "significant proof" of a wrongful employment action can establish the commonality

27 requirement of Rule 23.). Evidence that Plaintiff alone received inaccurate wage

28 statements does not establish or even create an inference that all other store employees

1  suffered from the California Labor Code violation. Moreover, Plaintiff has not provided
2  any other admissible evidence that similar wage practices occurred at other Kmart stores
3  in California. Plaintiff has not established that inaccurate wage statements are a
4  common issue affecting the entire sub-class. As Plaintiff has not shown that common
5  issues affect the class, the Court need not address the other requirements for class
6  certification under Rule 23. Accordingly, the Court shall deny Plaintiff's motion to certify
7  this subclass.

8  **VIII.**   **CONCLUSION AND RECOMMENDATION**

9      For the foregoing reasons, the Court RECOMMENDS the following:

10  1.    Defendant's motion to strike (ECF No. 95) be GRANTED and the
11      declarations of six putative class members provided by Plaintiff be
12      STRICKEN;

13  2.    Plaintiff's motion to strike (ECF No. 104) be GRANTED IN PART and
14      DENIED IN PART and that the declarations of the non-exempt employees
15      provided by Defendant, notwithstanding the non-exempt employees from
16      the Coalinga Kmart store, be STRICKEN;

17  3.    Plaintiff's motion to modify the scheduling order (ECF No. 113) be
18      DENIED; and

19  4.    Plaintiff's motion for class certification (ECF No. 82) be DENIED.

20      These findings and recommendations are submitted to the United States District
21  Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636
22  (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court,
23  Eastern District of California. Within fourteen (14) days after being served with a copy,
24  any party may file written objections with the Court and serve a copy on all parties. Such
25  a document should be captioned "Objections to Magistrate Judge's Findings and
26  Recommendations." Replies to the objections shall be served and filed within fourteen
27  (14) days after service of the objections. The Court will then review the Magistrate
28  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c). The parties are advised that failure

43

1  to file objections within the specified time may waive the right to appeal the District

2  Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3

4  IT IS SO ORDERED.

5      Dated:    June 5, 2014          /s/ *Michael J. Seng*

6                                      UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28